## The Isle Royale Mining Company v. John Hertin and Michael Hertin.

*Labor done by Mistake, but in Good Faith, upon Another's Property.*

One is not entitled to compensation for labor expended by mistake, though in good faith, upon the property of another who appropriates the benefit of it, when the identity of the original article is not destroyed nor its value greatly increased. So *held* where cord wood was cut on the lands of another, hauled to a landing and piled, and was then seized and sold by the owner of the land.

The test of a general principle is not its operation in an individual case, but its general working.

Good faith does not excuse a trespasser from payment of damages. He must ascertain his rights, and not invade another's possession, actual or constructive.

A willful trespasser who expends his money or labor on the property of another acquires no rights therein, but the owner may reclaim it so long as its identity is not changed by conversion into some new product.

It is equitable doctrine that where labor has been, by mistake and in good faith, expended upon another's property, thereby converting it into something substantially different, and the value of the original article is insignificant as compared with the value of the new production, title passes to the person whose labor has increased its value, and the original owner can recover the original value.

Distinguished from *Wetherbee v. Green*, 22 Mich., 311, in that the identity of the converted property was not substantially changed, nor its value greatly increased.

Error to Houghton. Submitted June 14. Decided Oct. 16.

Trover and Indebitatus assumpsit. The facts are in the opinion.

*T. L. Chadbourne* and *S. F. Seager* for plaintiff in error. One cannot recover in trover unless he owned the property or had lawful possession (1 Hilliard on Torts, 501-3; *Burdick v. Michael*, 32 Mich., 246) and recovery must be for the value of the property at the time of conversion. *Rip*

*ley v. Davis,* 15 Mich., 75.    A trespasser cannot acquire
any property, general or special, in timber cut by him, and
cannot maintain trover against another trespasser.    *Turley
v. Tucker,* 6 Mo., 583.    The owner of land cannot bring
trover for saw-logs cut by a trespasser, *Final v. Backus,* 18
Mich., 218; *Johnson v. Ballou,* 25 Mich., 460; *Grant v.
Smith,* 26 Mich., 201; *Greeley v. Stilson,* 27 Mich., 153;
*Winchester v. Craig,* 33 Mich., 205; nor replevin when the
identity of the article converted has been substantially
changed.    *Wetherbee v. Green,* 22 Mich., 311.

*Chandler & Grant* and *G. V. N. Lothrop* for defendant
in error.    Where the chief value of the property consists
of the labor in good faith expended on it, the title should
follow the labor.    *Ryder v. Hathaway,* 21 Pick., 305; Story
on Bailments, 40; *Wetherbee v. Green,* 22 Mich., 311.    By
appropriating labor expended by mistake upon his property,
the owner waives the tort, and an implied promise is raised
to pay a reasonable compensation.    *Hogsett v. Ellis,* 17
Mich., 351; *Welch v. Bagg,* 12 Mich., 41; *Strong v. Saun-
ders,* 15 Mich., 339; 2 Greenl. Ev., § 107; 1 Pars. Cont.,
4; where equity and good conscience require, a promise is
implied.    *Turner v. Jones,* 1 Lans., 147; *Sheldon v. Sher-
man,* 42 N. Y., 484.

COOLEY, C. J.    The parties to this suit were owners of
adjoining tracts of timbered lands.    In the winter of 1873-4
defendants in error, who were plaintiffs in the court below,
in consequence of a mistake respecting the actual location,
went upon the lands of the mining company and cut a
quantity of cord wood, which they hauled and piled on the
bank of Portage Lake.    The next spring the wood was
taken possession of by the mining company, and disposed of
for its own purposes.    The wood on the bank of the lake
was worth $2.87½ per cord, and the value of the labor ex-
pended by plaintiffs in cutting and placing it there was $1.87½
per cord.    It was not clearly shown that the mining com-
pany had knowledge of the cutting and hauling by the
plaintiffs while it was in progress.    After the mining com-
pany had taken possession of the wood, plaintiffs brought

this suit. The declaration contains two special counts, the first of which appears to be a count in trover for the conversion of the wood. The second is as follows:

"And for that whereas also, the said plaintiff, Michael Hertin, was in the year 1874 and 1875, the owner in fee simple of certain lands in said county of Houghton, adjoining the lands of the said defendant, and the said plaintiffs were, during the years last aforesaid, engaged as co-partners in cutting, hauling and selling wood from said lands of said Michael Hertin, and by mistake entered upon the lands of the said defendant, which lands adjoined the lands of the said plaintiff, Michael Hertin, and under the belief that said lands were the lands of the said plaintiff, Michael Hertin, cut and carried away therefrom a large amount of wood, to-wit: one thousand cords, and piled the same upon the shore of Portage Lake, in said county of Houghton, and incurred great expense, and paid, laid out and expended a large amount of money in and about cutting and splitting, hauling and piling said wood, to-wit: the sum of two thousand dollars, and afterwards, to-wit: on the first day of June, A. D. 1875, in the county of Houghton aforesaid, the said defendant, with force and arms, and without any notice to or consent of said plaintiffs, seized the said wood and took the same from their possession and kept, used and disposed of the same for its own use and purposes, and the said plaintiffs aver that the labor so as aforesaid done and performed by them, and the expense so as aforesaid incurred, laid out and expended by them in cutting, splitting, hauling and piling said wood, amounting as aforesaid to the value of two thousand dollars, increased the value of said wood ten times and constituted the chief value thereof, by reason whereof the said defendant then and there became liable to pay to the said plaintiff, the value of the labor so as aforesaid expended by them upon said wood and the expense so as aforesaid incurred, laid out and expended by them in cutting, splitting, hauling and piling said wood, to-wit: the said sum of two thousand dollars, and being so liable, the said defendant in consideration thereof, afterwards to-wit: on the same day and year last aforesaid and at the place aforesaid, undertook, and then and there faithfully promised the said plaintiffs to pay unto the said plaintiffs the said sum of two thousand dollars, and the interest thereon."

The circuit judge instructed the jury as follows:

"If you find that the plaintiffs cut the wood from defendant's land by mistake and without any willful negli-

gence or wrong, I then charge you that the plaintiffs are entitled to recover from the defendant the reasonable cost of cutting, hauling and piling the same." This presents the only question it is necessary to consider on this record. The jury returned a verdict for the plaintiffs.

Some facts appear by the record which might perhaps have warranted the circuit judge in submitting to the jury the question whether the proper authorities of the mining company were not aware that the wood was being cut by the plaintiffs under an honest mistake as to their rights, and were not placed by that knowledge under obligation to notify the plaintiffs of their error. But as the case was put to the jury, the question presented by the record is a narrow question of law, which may be stated as follows: whether, where one in an honest mistake regarding his rights in good faith performs labor on the property of another, the benefit of which is appropriated by the owner, the person performing such labor is not entitled to be compensated therefor to the extent of the benefit received by the owner therefrom? The affirmative of this proposition the plaintiffs undertook to support, having first laid the foundation for it by showing the cutting of the wood under an honest mistake as to the location of their land, the taking possession of the wood afterwards by the mining company, and its value in the condition in which it then was and where it was, as compared with its value standing in the woods.

We understand it to be admitted by the plaintiffs that no authority can be found in support of the proposition thus stated. It is conceded that at the common law when one thus goes upon the land of another on an assumption of ownership, though in perfect good faith and under honest mistake as to his rights, he may be held responsible as a trespasser. His good faith does not excuse him from the payment of damages, the law requiring him at his peril to ascertain what his rights are, and not to invade the possession, actual or constructive, of another. If he cannot thus protect himself from the payment of damages, still less, it would seem, can he establish in himself any affirmative rights, based upon his unlawful, though unintentional en-

croachment upon the rights of another.    Such is unquestionably the rule of the common law, and such it is admitted to be.

. It is said, however, that an exception to this rule is admitted under certain circumstances, and that a trespasser is even permitted to make title in himself to the property of another, where in good faith he has expended his own labor upon it, under circumstances which would render it grossly unjust to permit the other party to appropriate the benefit of such labor.    The doctrine here invoked is the familiar one of title by accession, and though it is not claimed that the present case is strictly within it, it is insisted that it is within its equity, and that there would be no departure from settled principles in giving these plaintiffs the benefit of it.

The doctrine of title by accession is in the common law as old as the law itself, and was previously known in other systems.    Its general principles may therefore be assumed to be well settled.    A willful trespasser who expends his money or labor upon the property of another, no matter to what extent, will acquire no property therein, but the owner may reclaim it so long as its identity is not changed by conversion into some new product.    Indeed some authorities hold that it may be followed even after its identity is lost in a new product; that grapes may be reclaimed after they have been converted into wine, and grain in the form of distilled liquors.    *Silsbury v. McCoon*, 3 N. Y., 379. See *Riddle v. Driver*, 12 Ala., 590.    And while other authorities refuse to go so far, it is on all hands conceded that where the appropriation of the property of another was accidental or through mistake of fact, and labor has in good faith been expended upon it which destroys its identity, or converts it into something substantially different, and the value of the original article is insignificant as compared with the value of the new product, the title to the property in its converted form must be held to pass to the person by whose labor in good faith the change has been wrought, the original owner being permitted, as his remedy, to recover the value of the article as it was before the conversion.    This

is a thoroughly equitable doctrine, and its aim is so to adjust the rights of the parties as to save both, if possible, or as nearly as possible, from any loss.   But where the identity of the original article is susceptible of being traced, the idea of a change in the property is never admitted, unless the value of that which has been expended upon it is sufficiently great, as compared with the original value, to render the injustice of permitting its appropriation by the original owner so gross and palpable as to be apparent at the first blush.   Perhaps no case has gone further than *Wetherbee v. Green*, 22 Mich., 311, in which it was held that one who, by unintentional trespass, had taken from the land of another young trees of the value of $25, and converted them into hoops worth $700, had thereby made them his own, though the identity of trees and hoops was perfectly capable of being traced and established.

But there is no such disparity in value between the standing trees and the cord wood in this case as was found to exist between the trees and the hoops in *Wetherbee v. Green.* The trees are not only susceptible of being traced and identified in the wood, but the difference in value between the two is not so great but that it is conceivable the owner may have preferred the trees standing to the wood cut.   The cord wood has a higher market value, but the owner may have chosen not to cut it, expecting to make some other use of the trees than for fuel, or anticipating a considerable rise in value if they were allowed to grow.   It cannot be assumed as a rule that a man prefers his trees cut into cord wood rather than left standing, and if his right to leave them uncut is interfered with even by mistake, it is manifestly just that the consequences should fall upon the person committing the mistake, and not upon him.   Nothing could more encourage carelessness than the acceptance of the principle that one who by mistake performs labor upon the property of another should lose nothing by his error, but should have a claim upon the owner for remuneration. Why should one be vigilant and careful of the rights of others if such were the law?   Whether mistaken or not is all the same to him, for in either case he has employment

and receives his remuneration; while the inconveniences, if any, are left to rest with the innocent owner. Such a doctrine offers a premium to heedlessness and blunders, and a temptation by false evidence to give an intentional trespass the appearance of an innocent mistake.

A case could seldom arise in which the claim to compensation could be more favorably presented by the facts than it is in this; since it is highly probable that the defendant would suffer neither hardship nor inconvenience if compelled to pay the plaintiffs for their labor. But a general principle is to be tested, not by its operation in an individual case, but by its general workings. If a mechanic employed to alter over one man's dwelling house, shall by mistake go to another which happens to be unoccupied, and before his mistake is discovered, at a large expenditure of labor shall thoroughly overhaul and change it, will it be said that the owner, who did not desire his house disturbed, must either abandon it altogether, or if he takes possession, must pay for labor expended upon it which he neither contracted for, desired nor consented to? And if so, what bounds can be prescribed to which the application of this doctrine can be limited?. The man who by mistake carries off the property of another will next be demanding payment for the transportation; and the only person reasonably secure against demands he has never assented to create, will be the person who, possessing nothing, is thereby protected against any thing being accidentally improved by another at his cost and to his ruin.

The judgment of the circuit court must be reversed, with costs, and a new trial ordered.

The other Justices concurred.