## HORTON v. JACK et al.*

### No. 19,328; September 4, 1894.

#### 37 Pac. 652.

**Limitation of Actions.—An Action for Conversion is Within** Code of Civil Procedure, section 338, subdivision 3, prescribing the limitation of an action for taking, detaining or injuring goods or chattels.[1]

**Executors—Conveyance for Individual Debt—Conversion.—** One to whom an executrix conveys property of the estate, in payment of her individual debt, before distribution, and without authority of the probate court, is, on refusal to return, liable to the estate for conversion, though the executrix was the sole legatee, and the property was the community property, and executrix was testator's widow. In order to maintain such action, it is not necessary to prove an

---

*For subsequent opinion, see 115 Cal. 29, 46 Pac. 920.

[1] Cited in Snyder v. Jack, 140 Cal. 585, 74 Pac. 139, as part of the history of the case, thus: "This case has been here three times and the decisions on those appeals are reported respectively in Horton v. Jack, 37 Pac. 652, 115 Cal. 29, 46 Pac. 920, and 126 Cal. 522, 58 Pac. 1051. Subsequently Horton died and the present plaintiff was substituted in his place."

Cited with approval in Allsop v. Joshua Hendy Mach. Works, 5 Cal. App. 234, 90 Pac. 42, where the defendant, as the court showed, had erroneously pleaded section 337 and subdivision 1 of section 339 of the Code of Civil Procedure.

Cited in Lowe v. Ozmun, 137 Cal. 259, 260, 70 Pac. 87, where the court, explaining, said: "In cases of unlawful taking or detaining personal property, the wronged party has usually the option of either bringing an action for its specific recovery or an action to recover its value; that is, an action which at common law would have been replevin or detinue or trover. Section 338 looks to the wrong—to the thing itself—and not to the particular kind of action which may be used to obtain the remedy."

Cited in Kramm v. Stockton Electric R. R. Co., 10 Cal. App. 280, 101 Pac. 918, where the case, so frequently before the court on appeal, is explained in its several phases, with the comment finally: "Thus, it will be seen there was no question as to the credibility of the witnesses, no conflict as to the facts was involved, but the court determined that necessarily the same legal effect must follow from the same facts."

indebtedness against the estate and necessity of obtaining the property to satisfy it.[1]

Executors — Conveyance for Individual Debt — Conversion.— Though the person to whom an executrix conveys property belonging to the estate does, as he agrees, have it applied on the claim of a bank against her individually, the bank is not jointly liable with him to the estate for the conversion of the property, it not being shown that he was acting for the bank in such manner as to bind it.

APPEAL from Superior Court, San Luis Obispo County; V. A. Gregg, Judge.

Action by Joseph Horton, administrator with the will annexed of James A. Brown, deceased, against R. E. Jack and the First National Bank of San Luis Obispo. Judgment for defendants. Plaintiff appeals. Reversed as to defendant Jack.

M. C. Hester and Graves & Graves for appellant; Wilcoxon & Bouldin and J. M. Wilcoxon for respondent.

TEMPLE, C.—This appeal is from the judgment and from an order refusing a new trial. The complaint shows that James A. Brown died testate October 26, 1889, in the county of Santa Barbara, leaving his widow, Catherine J. Brown, his executrix; that said will was duly admitted to probate, the said Catherine J. appointed executrix, and that she duly qualified as such, and took possession of the property of the estate, consisting in part of certain personal property, which is specifically described in the complaint; that on the fifteenth day of April, 1890, while the said executrix was lawfully possessed of said property, as the property of the estate, defendants "wrongfully and without right took and carried away said personal property, and the whole thereof, and converted and disposed of the same to their own use." Said property was at the time of the value of $6,000. Catherine J. Brown died April 17, 1892, not having closed the administration.

[1] Cited in Raulet v. Northwestern Nat. Ins. Co., 157 Cal. 225, 107 Pac. 297, where the court distinguishes between the validity of an act of ownership by a sole legatee before and such after the expiration of the time allowed for presentation and payment of the debts of the estate.

Proper allegations follow, showing due appointment and qualification of plaintiff as administrator with the will annexed. The complaint was demurred to for insufficiency of facts, and because it appeared from the complaint that the cause of action was barred by section 339 of the Code of Civil Procedure. The demurrer was overruled, and defendants answered separately. The answer of the bank consists of denials. The answer of defendant Jack denies the conversion, the alleged value of the property, the official character of plaintiff; avers that Catherine J. Brown was paid the full value of the property, and that the cause of action is barred by section 339 of the Code of Civil Procedure. The answer then proceeds with an averment that James A. Brown, by his will, bequeathed all his property to Catherine J. Brown, and appointed her executrix, with power to sell personal property without leave of .court; that she qualified, and afterward procured an order authorizing her to sell the personal property, including the property described in the complaint, at private sale; that she did, subsequently to the order, execute to Jack a bill of sale of the property, but did not deliver the same to him, but afterward agreed with Jack that the property should be delivered to one Sandercock, to be by him sold, the proceeds, less expenses, to be paid to Jack for the bank, and to be applied to an indebtedness of said Catherine J. to it; that thereupon said Catherine J. appointed said Sandercock her agent, and delivered the property to him; that Sandercock sold the property as her agent, and, at her request, paid the money to the bank. The answer then proceeds with a plea in bar of plaintiff's claim.

Respondent raises a preliminary point, to the effect that plaintiff is entitled to no relief, because his complaint shows that his cause of action is barred by the statute of limitations, and the demurrer on this ground should have been sustained. If the demurrer were well taken, it would not follow that respondent could avail himself of the point on this appeal; but, waiving that, the point is not well taken. The question suggested is whether an action for the conversion of goods is barred by subdivision 3 of section 338 of the Code of Civil Procedure. Respondent claims that such an action is not covered by that section, and is therefore included in section 339, and is barred in two years. The complaint shows that the

suit was not commenced within two years after the alleged conversion. Subdivision 3, section 338, reads: "An action for taking, detaining, or injuring any goods or chattels, including actions for the recovery of specific personal property." Cooley defines "conversion" as follows: "Any distinct act of dominion wrongfully exerted over one's property, in denial of his right or inconsistent with it, is conversion." The author also quotes with approval from Liptrot v. Holmes, 1 Kelly, 381: "The action of trover being founded on a conjunct right of property and possession, any act of the defendant which negatives or is inconsistent with such right amounts in law to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant. It is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is, in law, a conversion." While there may be cases, under this definition of "conversion," where there is no manual taking or corporal detention of the property, still I apprehend there is no case in which the plaintiff has not been actually deprived of his property, or is not entitled under the rules of law to consider himself deprived of it for the sake of the remedy, and when a judgment for damages for the conversion has been paid the wrongdoer becomes the owner of the property. It has been wrongfully taken from the owner, although it is not necessary that the original taking be wrongful. The words in the statute are not used to indicate any particular form of action, but I think it applies to all those cases in which the person injured has a remedy in an action of claim and delivery, or for conversion. Certainly, one whose property has been wrongfully taken or detained may sue for conversion, if at the time he was entitled to the possession of it. I think the case falls within the provisions of section 338, and the cause of action was not barred.

The cause was tried by the court without a jury, and the court found for the defendant Jack, a nonsuit having been entered as to the bank. Several findings of fact are excepted to as not sustained by the evidence. Among such findings are the following: (1) That the personal property was never delivered to Jack, although it is admitted that a bill

of sale of the property was made and delivered to him; (2) that Sandercock, who took the property and sold it, was the agent of the executrix, and not the agent of Jack; and (3) that the proceeds of the property were paid to the executrix.

1. It seems that Mrs. Brown was indebted to the bank, of which Jack was president; that it was agreed between Jack and Mrs. Brown that the property should be conveyed to Jack as security and immediately sold, and the proceeds paid on Mrs. Brown's personal indebtedness to the bank. In pursuance of this agreement an absolute bill of sale was executed, and Sandercock was selected to sell the property, with the consent of Mrs. Brown. Having delivered the bill of sale to Jack, and agreed upon Sandercock as a proper person to conduct the sale, Mrs. Brown prepared a letter to be handed by Sandercock to Bailey, her agent, and which was so delivered. It was as follows:

"Mr. S. P. Bailey—

"Dear Sir: I have made a bill of sale to Mr. Jack of the whole outfit. Mr. Sandercock, the bearer of the note, will consult you about the disposition of the outfit. If Mr. Sandercock cannot manage the disposition of the same without your help, then you will please go with him. Mr. Sandercock acts as Mr. Jack's agent and the entire disposition must be under Mr. Sandercock's control.

"C. J. BROWN."

Mr. Sandercock, also, at the same time, handed Bailey a letter from Mr. Jack, as follows:

"Mr. Bailey—

"Dear Sir: This will introduce to you my friend, Mr. John G. Sandercock. I have bought of Mrs. J. A. Brown the whole grading outfit which belonged to the late J. A. Brown, and I send him down to represent me in the premises, and to sell according to the general plan that you have arranged. You will therefore please deliver the whole business to my representative, Mr. Sandercock. I should be pleased to have you accompany Mr. Sandercock, and assist him all in your power. Mrs. Brown's desire also is that you shall accompany Mr. S., and aid with your counsel and co-operation.

"Yours truly,

"R. E. JACK."

Bailey, acting for Mrs. Brown, had already arranged to ship the goods to Modesto for sale. They were then turned over to Sandercock, who shipped them to Modesto. Bailey accompanied him, but acted in entire subordination to Sandercock. The property was sold and the proceeds sent by Sandercock to Jack, who applied them to the payment of Mrs. Brown's individual debt to the bank. At the trial Mr. Jack testified as follows: "The understanding, as between Mrs. Brown and Mr. Unangst and myself, was that he would put this property into my hands to be sold for her, and the amount applied on this bank indebtedness. We were then making advances after the property was sold, and the money paid into my hands. I placed it to the acount of Mrs. Brown in the First National Bank, i. e., account to her during her lifetime for the moneys so received. I always accounted for them. They were applied to her account at her request." On cross-examination he testified: "Q. Did you ever have any account with Mrs. Brown as executrix of the estate of J. A. Brown? A. I told you yesterday I hadn't. . . . . Q. Did you ever file a claim with her in a formal way, and have her approve it as administratrix or executrix of the estate? A No. . . . . Q. She never borrowed any money from your bank, did she? A. Yes; borrowed a great deal. Q. What was the amount of it? A. I don't know what amount it was. Q. Did she borrow herself? Did she get the money? A. Yes." Mr. J. A. Brown had been engaged in certain work at Port Harford. After his death, Mrs. Brown continued the work on her own account, at a loss. A small part of the indebtedness was that of Mr. Brown, which was never presented to the estate for allowance. Most of it was incurred by Mrs. Brown herself. From these extracts, I think it is evident that the findings, in the respects mentioned, are not sustained by the evidence. In the nature of things, there could not well be a substantial conflict upon these points.

The court also found that Jack had not converted the property to his own use. That he took the property, by the consent of Mrs. Brown, to sell, and to apply the proceeds to the payment of her individual debt to the bank, cannot be denied. Did it amount, under the circumstances, to a conversion? Of course, when Mrs. Brown conveyed the property to Jack in payment of her individual debt, she misappropriated it. She

put it out of her power to hold the property as executrix for the estate, and subject to the orders of the court. It was a clear violation of her duty. It was a wasting of the estate which would constitute a devastavit. Ordinarily, no doubt, one who receives property under such circumstances in payment of an individual debt of the executrix to him may be treated by the successor of such executrix, after a demand and a refusal to deliver the property, as a wrongdoer. Respondent contends that such consequence cannot follow here, because the executrix was also sole legatee, and therefore had the power to sell and apply the property to her own use. The will does not in terms authorize the executrix to sell property without leave of the court. Nor, if it be conceded that all the property is by the will bequeathed to the widow, would that consequence follow: As legatee she could sell her interest subject to the administration. In the will the testator declared all his property community property. He then gave one dollar each to two brothers and three sisters. He then declares that he has executed deeds to his wife for his real estate, and deposited them in escrow, to be delivered to his wife upon his death. He then bequeaths his personal property to his wife, but directs that his wife "shall, by will or otherwise, cause any and all residue or remainder of my real estate and personal property remaining after her death to be distributed [to his brothers and sisters], but I wish her, my said wife, to be untrammeled in the use of said estate during the term of her natural life." Subsequently to the sale to Jack and by him, and the application of the proceeds, Mrs, Brown died. The sale to Jack was never confirmed by the probate court. There had, however, been made an order of sale which authorized the executrix to sell the personal property at private sale. No report was ever made to the probate court of any sales made through Sandercock, but the executrix reported to the court that she had, through mistake, sold the property in question to Jack to pay her individual debt. Thereupon, the probate court refused to confirm the sale. It does not appear whether or not there are debts outstanding against the estate, or whether the administrator with the will annexed has in his hands money or property with which to pay the expenses of administration. Nor does it appear when notice to creditors was published, or, indeed, whether such no-

tice has been published at all. The construction of the will is a matter for the probate court, but I will assume that the will gave the property to Mrs. Brown absolutely, except that she was denied the power of testamentary disposition. One-half she did not take under the will, but it all was subject to the right of the personal representative to have the custody during administration, and to the payment of the debts of the testator and the costs of administration. The executor undoubtedly has such title and right of possession as will authorize him to maintain an action for the conversion of the assets of the estate. Nor do I see how title derived from an heir or legatee can constitute a defense, or put the executor to the necessity of proving an indebtedness to satisfy which the property is necessary. The vendee in such case may have rights which should be protected when the estate is finally distributed to the beneficiaries under the will. Pending the administration, however, the legatees have not the right of possession, and may be held for conversion if they wrongfully deprive the executor of the property. A contrary rule might lead to great trouble and loss. It may not be known whether there are creditors or not until nearly ten months have elapsed. Yet the administrator is responsible to creditors for the preservation of the property. If the vendee of an heir had made way with property, and had become insolvent, the administrator could not defend himself on the ground that he had delivered the property to an heir; and, besides, it cannot always be known who are heirs or legatees until distribution. Power to declare the succession, to determine heirship, and to construe wills, is in the probate court. Courts in which suits of this character may be brought cannot determine such questions; and, if such defense may be made, it would lead to delay and expense. The policy of the law certainly is that estates should be quickly settled, and administrators should not be exposed to such litigation. Until distribution, the right of the representative should be absolute, in the interest of all concerned. A fair illustration of the possible evils of such a rule would be in the well-known Blythe estate. Suppose a "claimant" in that estate had property and would not deliver it because there were sufficient assets without it? Would any court where such suit was brought against the claimant be compelled to determine the question of heirship? The right of a legatee

differs a little from that of an heir. But there is no difference under the statute as to the right of a legatee to possession prior to distribution. Nor do I see that the fact that the property was community property can make a difference. The widow does not take her share of the common property as heir, but her title is subject to administration and payment of debts. Her title is no more absolute than that of an heir at law, and the administrator has the same right of possession. Respondent has not been able to cite an authority which will sustain the conclusion reached by the court. He cites, however, Hunt v. Hunt, 11 Nev. 442, Presby v. Powers, 81 Ill. 125, and Rutherford v. Thompson, 14 Or. 236, 12 Pac. 382. In Hunt v. Hunt, it was held that the widow was the devisee of the property, and that her deed conveyed title subject to administration, and that the title of the purchaser was good—not as against the executor, but as against an heir at law. Presby v. Powers is a miscitation. I have found no such case. In Rutherford v. Thompson no such question was involved. A person, not the legal representative and not an heir or legatee, had disposed of some of the property, and the question was how far the common-law doctrine applicable to executors de son tort obtained in Oregon. It is enough, however, in my opinion, to say that the legislature has given to the personal representative the custody of the property, and has made him responsible for it, and has also provided the mode in which he may be discharged of his responsibility. The power of the legislature over the subject is plenary, and the law recognizes no such exception as it is sought to establish in this case. As we have seen, the will contains no grant to the executrix of power to sell. The fact that the property was bequeathed to the same person who was named as executrix is not the equivalent of such power, nor does it make a case which comes within the decision in Re Delaney, 49 Cal. 85. I think, therefore, the court erred in holding that Jack did not convert the property to his own use.

The cause of action was not barred by the judgment rendered in the suit of R. E. Jack v. Catherine J. Brown. Mrs. Brown was not sued in her representative character, nor was any question raised in the case as to the right of Mrs. Brown to dispose of the property to Jack. The validity of the sale was not questioned. The action was brought to foreclose a

mortgage given by Mrs. Brown upon real estate.   No mention of this property was made in the complaint.   In the answer it is averred that a portion of the debt was paid by the sale to him by Mrs. Brown of certain personal property.   It is not shown in any way that it is the property involved in this action, but conceding that it was, it is not claimed that it belonged to the estate.   Having bought it as the property of Mrs. Brown, and sold it, and applied the proceeds to the payment of his debt, Jack could not then have refused to give her credit for it.   Both parties, then, repudiated the title of the estate.

There was no error in granting a nonsuit as to the bank. Quite possibly, plaintiff could have shown that Jack was acting for the bank in such manner as to bind the bank, and render it jointly liable.   I do not find such testimony in the record.   I think the judgment of nonsuit in favor of the corporate defendant should be affirmed, but that the judgment and order in favor of defendant Jack should be reversed.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment of nonsuit in favor of the corporate defendant is affirmed, and the judgment and order in favor of defendant Jack are reversed.