[L. A. No. 572.   Department One.— October 31, 1899.]

JOSEPH HORTON, as Administrator, et cetera, Appellant, v.

R. E. JACK, Respondent.

ESTATES OF DECEASED PERSONS — MISAPPROPRIATION OF PROPERTY BY EXECUTRIX — TRANSFER FOR PRIVATE DEBT. — An executrix who, without an order of court, transfers property belonging to the estate of her deceased husband to the president of a bank to be sold and the proceeds applied in payment of her individual debt to the bank, misappropriates and wastes the property of the estate; and it cannot alter the case that her account with the bank included some prior indebtedness of her deceased husband, or that she was the sole legatee of the property.

ID.—CONVERSION BY TRANSFEREE—ACTION BY SUCCESSOR OF EXECUTRIX.— The transferee of the property, who caused it to be sold by his agent and the proceeds applied to the payment of the indebtedness of the executrix to the bank, may be treated as a wrongdoer by the successor of the executrix, who may bring an action against him for the conversion of the property.

ID.—CONVERSION, HOW CONSTITUTED—AGENCY—MANUAL TAKING—APPLICATION OF PROCEEDS—DOMINION.—The conversion of the property by the agent of the defendant pursuant to his direction was a conversion by the defendant. Neither a manual taking by the defendant, nor the application of the proceeds to his own use, was essential to a conversion by him; but it was sufficient in law to constitute a conversion by the defendant that he exercised a dominion over the property in exclusion or in defiance of the plaintiff's right.

ID.—LAW OF CASE—DIRECTION TO JURY—VERDICT FOR PLAINTIFF.—Where the testimony at the last trial in regard to the conversion of the property by the defendant is substantially the same as on former trials, the law applicable to which was declared in this court in favor of the plaintiff upon former appeals, the court should have directed the jury to bring in a verdict for the plaintiff for the amount admitted by the defendant to be the value of the property.

APPEAL from a judgment of the Superior Court of San Luis Obispo County and from an order denying a new trial.   J. E. Prewett, Judge.

The facts are stated in the opinion of the court, upon this and upon the former appeals, reported in 37 Pac. Rep. 652, and 115 Cal. 29.

M. C. Hester, for Appellant.

Wilcoxon & Bouldin, J. M. Wilcoxon, and R. B. Carpenter, for Respondent.

VAN DYKE, J.—This is the third appeal in this case. On the first appeal the nonsuit as to the defendant corporation was affirmed, but the judgment in favor of defendant Jack was reversed and the cause remanded for a new trial between the plaintiff and said defendant. (*Horton v. Jack,* 115 Cal. 29.) The second trial resulted in a verdict and judgment for the defendant, and on appeal from said judgment and order denying a new trial they were reversed and the cause again remanded. The last trial was also by a jury, and a verdict was rendered for the defendant. From the judgment entered on said verdict, and from the order denying the plaintiff's motion for a new trial, this appeal is taken. The action is for a conversion of certain personal property belonging to the estate of James A. Brown, deceased.

In the opinion on the first trial the facts in the case are stated as follows: "It seems that Mrs. Brown was indebted to the bank of which Jack was president; that it was agreed between Jack and Mrs. Brown that the property should be conveyed to Jack as security and immediately sold and the proceeds paid on Mrs. Brown's personal indebtedness to the bank. In pursuance of this agreement an absolute bill of sale was executed, and Sandercock was selected to sell the property, with the consent of Mrs. Brown. Having delivered the bill of sale to Jack, and agreed upon Sandercock as a proper person to conduct the sale, Mrs. Brown prepared a letter to be handed by Sandercock to Bailey, her agent, and which was so delivered. It was as follows:

" 'Mr. S. P. Bailey.

" 'Dear Sir: I have made a bill of sale to Mr. Jack of the whole outfit. Mr. Sandercock, the bearer of the note, will consult you about the disposition of the outfit. If Mr. Sandercock cannot manage the disposition of the same without your help, then you will please go with him. Mr. Sandercock acts as Mr. Jack's agent, and the entire disposition must be under Mr. Sandercock's control.        C. J. BROWN.'

"Mr. Sandercock also at the same time handed Bailey a letter from Mr. Jack as follows:

" 'Mr. Bailey.

" 'Dear Sir: This will introduce to you my friend, Mr. John

C. Sandercock. I have bought of Mrs. J. A. Brown the whole grading outfit which belonged to the late J. A. Brown, and I send him down to represent me in the premises, and to sell according to the general plan that you have arranged. You will therefore please deliver the whole business to my representative, Mr. Sandercock. I should be pleased to have you accompany Mr. Sandercock, and assist him all in your power. Mrs. Brown's desire also is that you shall accompany Mr. S. and aid with your counsel and co-operation. Yours truly,  R. E. JACK.'

"Bailey, acting for Mrs. Brown, had already arranged to ship the goods to Modesto for sale. They were then turned over to Sandercock, who shipped them to Modesto. Bailey accompanied him, but acted in entire subordination to Sandercock. The property was sold and the proceeds sent by Sandercock to Jack, who applied them to the payment of Mrs. Brown's individual debt to the bank." Accompanying the bill of sale of the property, Jack executed the following:

"This indenture witnesseth: That, whereas, Catharine J. Brown has this day by a bill of sale of even date herewith sold, transferred, and set over and delivered to R. E. Jack certain personal property in said bill of sale described, said bill of sale being hereby referred to and made a part hereof, now it is mutually understood and agreed that said R. E. Jack shall appoint a good and competent agent to take said property in charge and dispose of the same on the best terms possible, within a reasonable time, not to exceed four months in all from the date hereof, and that said R. E. Jack will, as soon as said property is disposed of, account to said Catharine J. Brown for the proceeds of said personal property within the four months aforesaid, and as soon as received apply said proceeds to the payment of the indebtedness of G. W. Kenney of the First National Bank of San Luis Obispo, for which indebtedness Catharine J. Brown has given written guarantee.

"Dated San Luis Obispo, April 15, 1890.

"R. E. JACK."

The judgment on the first appeal was reversed on the ground that the findings were not sustained by the evidence. The court in its opinion says: "Among such findings are the following:

1. That the personal property was never delivered to Jack, although..it is admitted that a bill of sale of the property was made and delivered to him; 2. That Sandercock, who took the property and sold it, was the agent of the executrix, and not the agent of Jack; and 3. That the proceeds of the property were paid to the executrix." Continuing further in the opinion it is said: "The court also found that Jack had not converted the property to his own use. That he took the property by the consent of Mrs. Brown to sell and to apply the proceeds to the payment of her individual debt to the bank cannot be denied. Did it amount under the circumstances to a conversion? Of course, when Mrs. Brown conveyed the property to Jack in payment of her individual debt she misappropriated it. She put it out of her power to hold the property as executrix for the estate and subject to the orders of the court. It was a clear violation of her duty. It was a wasting of the estate which would constitute a *devastavit*. Ordinarily, no doubt, one who receives property under such circumstances in payment of an individual debt of the executrix to him may be treated by the successor of such executrix, after a demand and a refusal to deliver the property, as a wrongdoer." On the second appeal, the respondent claimed that the evidence on the second trial was substantially different from that on the first, and that the debt to pay which the property was sold was the debt of the deceased Brown, instead of that of Mrs. Catharine J. Brown. But it was held by this court: "The facts as to the debt in question, as proved on the second trial, did not differ from those disclosed on the first trial. It appeared then, as it does now, that the deceased, in his lifetime, guaranteed the payment by Kenney of such sums as should be advanced to him by the bank of which the defendant Jack was president; that some such advances were made during the lifetime of the deceased; that after his death his widow, Catharine J., made a new guaranty, in her own name, of the like character; and that all the subsequent advances were made under the latter guaranty." After further noticing the testimony and the pleadings the court say: "We are therefore unable to perceive that the facts on the second trial differ at all from those on which our former opinion was predicated; and the propositions of law there decided are there-

fore decisive of the case on this appeal. (*Benson v. Shotwell,*
103 Cal. 163.)"

On the last trial, the answer was amended by eliminating
therefrom all affirmative matter as a defense; as thus amended
the answer simply denied that the defendant took and carried
away the personal property described in the complaint, or that
he converted the same to his own use, and denied that said
property was of the value of seven thousand dollars, or of any
other sum exceeding the value of four thousand five hundred
and twenty-nine dollars and sixty-five cents. On the trial, the
bill of sale with the stipulation on the part of the defendant
and letters from Mrs. Brown and defendant to Bailey were in-
troduced in evidence as on the former trials; also the testimony
of the lawyer who prepared the papers to the effect as before,
and the testimony of Bailey given at the former trial was read,
he having died in the meantime; also the testimony of Sander-
cock, the man appointed by defendant to take charge of the
property and dispose of the same as indicated in his letter, and
according to his stipulation already referred to. He says he
made out a list of the property; that a part of it had already
been disposed of by Bailey, but that Bailey turned over the pro-
ceeds of that which he had sold to him. "I turned the money
I got from the sales of that property over to the president of
the First National Bank. I think Mr. Jack was president at that
time. I made the report of sales to Jack as president of the
bank."

The testimony on the last trial was substantially that pro-
duced on the former trials. At any rate, it was equally strong
in favor of the plaintiff. It goes for nothing that defendant
says in his testimony that he never saw the property, and did
not handle it, and did not have anything to do with the sales
thereof or the proceeds. This means simply, in the light of the
other testimony, that he did not personally handle the property
or the proceeds; but there is no testimony on his part tending
to contradict the documentary and other testimony to the effect
that the property was sold, and the proceeds appropriated ac-
cording to his stipulation accompanying the bill of sale, and
the letter of directions by the defendant to Bailey to turn over
the property to his agent Sandercock; and in law what one does

by another he does himself. "It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant. It is not necessary that it should be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is in law a conversion." (*Liptrot v. Holmes*, 1 Ga. 381, quoted in the opinion on the first appeal.)

The answer in this case did not deny that the property belonged to the estate of plaintiff's intestate, James A. Brown, and the testimony clearly shows that defendant, through his agent, converted this property into money and appropriated it to the account of Mrs. Brown according to his written agreement; and it does not alter the case at all if that account of Mrs. Brown's included some prior indebtedness of her deceased husband, as held by this court on the first appeal.

The testimony on the last trial being substantially the same as on the two former, under the previous decisions of this court in the case the lower court should have directed the jury, as requested, to bring in a verdict for the plaintiff for the amount admitted by defendant to be the value of the property converted.

The evidence does not support the verdict for the defendant, and a new trial should, therefore, have been granted.

The judgment and order denying a new trial are reversed.

Beatty, C. J., and Harrison, J., concurred.

Hearing in Bank denied.