[L. A. No. 3223. Department Two.—March 11, 1914.]

FILIPPO POGGI, Appellant, v. C. A. SCOTT, Respondent.

CONVERSION—GIST OF ACTION.—The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by the defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action.

ID—SALE OF BARRELS CONTAINING WINE—IGNORANCE OF CONTENTS.— The grantee of a building, who, without authority, sells barrels of wine that were left on storage therein by a tenant of his grantor, in ignorance of their contents and ownership, and under the mistaken belief that the barrels were empty, is liable for a conversion of the wine.

APPEAL from a judgment of the Superior Court of San Diego County. T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

E. S. Torrance, for Appellant.

Haines & Haines, for Respondent.

HENSHAW, J.—Plaintiff sued to recover from defendant the sum of two thousand dollars damages suffered by him by reason of the unlawful conversion by defendant of some two hundred barrels of plaintiff's wine. A nonsuit was granted upon the ground that plaintiff had failed to prove a sufficient case for the jury and from the judgment which followed he appeals.

The primary and essential consideration therefore is, what facts did plaintiff by his evidence establish. He showed that his wine was stored in barrels in the cellar of a building situated at 12th and K streets in the city of San Diego. There were about two hundred and ten barrels of wine and some empty barrels. He rented the whole building from Judge Mouser, the agent of the owner, but used only the cellar. Subsequently, Judge Mouser leased the whole building to the Sanitary Laundry Company and thereafter the plaintiff paid rent for the use of the cellar to the Laundry Company. He was a stockholder in the Laundry Company and the Laundry Company was paying dividends. In practice the Laundry Company deducted the amount of the rent from the dividends due to plaintiff upon his stock. The wine was stored in a room in the cellar which room plaintiff kept locked. The empty barrels were near the door, the filled barrels in tiers along the wall. Plaintiff lived in the country, visited San Diego about twice a month and upon the occasion of each visit looked after his wine. Once a year he racked it off. It was sound wine, seven years old and of the value alleged. During the tenancy of the Sanitary Laundry Company Judge Mouser sold the property to the defendant Scott. Mr. Scott was informed of the tenancy of the Laundry Company at the time of the sale and also of the fact that plaintiff was a sub-tenant of the Laundry Company, paying rent to it for the use of the cellar. "It is my recollection," testifies Judge Mouser, "that I informed Mr. Scott that Mr. Poggi was occupying those basement rooms and had been paying the Laundry Company $2, and that he could have the rent from August 1, 1908." Poggi was not informed of this change in ownership. In due course the Laundry Company vacated the premises, Poggi's wine remained in the cellar, and he, himself, knowing nothing of the change of ownership understood that he was liable for his rent of two dollars per month to Judge Mouser. In November, 1909, Mr. Daneri, a friend of plaintiff's, phoned to him at the latter's home about fifteen miles from San Diego, asking him if he still owned the wine and telling him that it was being carted off and that it would be better for him to come to town and see about it. Poggi came to town the next day, found that his wine had been carried away and went immediately to Judge Mouser to ask

about it. Then, for the first time he knew, being informed by Judge Mouser, that the latter no longer had any connection with the property and that it had been sold to the defendant. Plaintiff immediately called upon defendant and was by him told that he knew nothing about the wine but that he had sold some old barrels in the cellar. It appears that a fraud and theft had been perpetrated in the following manner, and this is the testimony of the defendant. Two Italians, Bernardini and Ricci, called upon him and told him that there were some empty barrels in the cellar of his laundry building which they desired to buy. Scott replied that he did not know that there were any barrels there and made an appointment with them to visit the place the next day. He did so, meeting Bernardini alone. Bernardini took him to where the barrels were stored. There was no lock on the door and exposed to view were a number of broken barrels, ''back further were some more barrels, apparently whole. I went back and tapped them, and so far as I could discover they were empty.'' He told Bernardini that he knew nothing of the value of the barrels and asked what they were worth. Bernardini said they were worth ten or fifteen dollars. He regarded the barrels as old junk and told him that he would sell them for fifteen dollars provided Bernardini would clean the whole cellar out. ''I said further that I would sell him those barrels for fifteen dollars, but if anything should be in the barrels the trade should be different, to which Mr. Bernardini consented. The thought just came in my mind that possibly upon going into the thing there might be something there, and there being anything in them, you would not expect to sell them at that price—that was all, and he so understood.'' Bernardini and his companions carted off the wine in barrels and shipped it away. They were arrested and it was upon their preliminary examination that defendant gave the testimony above referred to and quoted from. This, with sufficient detail, presents the case of the plaintiff.

In support of the nonsuit respondent argues that Scott thought he was disposing of so much junk or rubbish in the form of barrels, that, therefore, he cannot be held for the conversion of full barrels of wine or for the value of wine in barrels. Further it is said that it is fallacious to argue that the loss of the wine was the consequence of any act of Scott, or

that any act of Scott produced it, or that there was any chain of connection, broken or unbroken, between Scott's act and the injury to Poggi, or that the loss to Poggi of his wine was the result, proximate or otherwise, of any act of Scott, or that Scott's act caused it in any sense at all.

If respondent's premises, as here stated, are correct, the conclusion of his nonliability is unassailable. But are they correct? The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant. It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results. Therefore, neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are of the gist of the action. "The plaintiff's right of redress no longer depends upon his showing, in any way, that the defendant did the act in question from wrongful motives, or generally speaking, even intentionally; and hence the want of such motives, or of intention, is no defense. Nor, indeed, is negligence any necessary part of the case. Here, then, is a class of cases in which the tort consists in the breach of what may be called an absolute duty; the act itself (in some cases it must have caused damage) is unlawful and redressible as a tort." (1 Bigelow on Torts, p. 6.) And says Judge Cooley (*Cubit* v. *O'Dett,* 51 Mich. 347, [46 Atl. 679]): "Absence of bad faith can never excuse a trespass, though the existence of bad faith may sometimes aggravate it. Every one must be sure of his legal right when he invades the possession of another." And without further quotation, reference may be made to 1 Street on Foundations of Legal Liability, p. 231 et seq.; 38 Cyc. p. 2015; *Horton* v. *Jack,* 4 Cal. Unrep. 758, [37 Pac. 653], s. c. 126 Cal. 526, [58 Pac. 1051]; *Budd* v. *Multnomah Co.,* 12 Or. 271, [53 Am. Rep. 355, 7 Pac. 99]; *Bolling* v. *Kirby,* 24 Am. St. Rep. 795, Prof. Freeman's note; *Isle Royal Mining Co.* v. *Hertin,* 37 Mich. 332, [26 Am. Rep. 520]; *Galvin* v. *Bacon,* 11 Me. 28, [25 Am. Dec. 258]; *Donahue* v. *Shippee,* 15 R. I. 453, [8 Atl. 541]; *Hobart* v. *Hagget,* 12 Me. 67, [28 Am. Dec. 159]; *Davis* v. *Tacoma Ry. & Power Co.,* 35 Wash. 203, [66 L. R. A. 802, 77 Pac. 209]; *Cook* v. *Monroe,* 45 Neb. 349, [63 N. W. 800]; *Gibbs* v. *Chase,* 10 Mass. 128.

In consonance with the principles of law thus declared no question can arise of the defendant's responsibility under the evidence. Conceding all that may be argued as to the absence of improper motives on the part of the defendant, the all important fact yet remains, under his own testimony, that he sold barrels that did not belong to him and which did with their contents belong to the plaintiff. That he did not know that the barrels contained wine did not excuse his conduct. He had no legal right to sell the barrels whether or not they contained wine. He was exercising an unjustifiable and unwarranted dominion and control over the property of another and from his acts great loss resulted to that other. If he did not, in fact, know that the barrels contained wine, at least his suspicions were aroused that they were not empty as is evidenced by his statement to Bernardini that if the barrels were not empty and did contain something they would make a different bargain. And while the conduct of the defendant as thus established was sufficient to make him liable for this tortious act of dominion over the property of another, there is the added fact in the testimony of Judge Mouser that the defendant was informed by him of the tenancy of plaintiff and ownership of the barrels and of the wine and that they were in the cellar of the building which defendant had purchased.

An appellate court is always reluctant to review evidence, the primary duty of weighing which rests with a jury. It does so only, as here, under compulsion. The views which it is forced to express are not to be taken as conveying anything beyond what the necessities of the consideration require. So here, those views are to be considered as expressing merely this court's conviction that the evidence offered by plaintiff demanded the consideration of the case by the jury and that the trial court was therefore in error in withholding that consideration from the jury and in granting a nonsuit.

The judgment appealed from is therefore reversed.

Melvin, J., and Lorigan, J., concurred.