Johnson vs. Godden, Admr., et al.

---

JOHNSON V. GODDEN, ADMR., ET AL.

GAMING ACT:    *Burden of proof under*
> One who pleads the gaming act in defense against a note and mortgage fair on their face, must prove the defense by clear and strong proof.

DEED:    *Acknowledgment—What necessary in*
> An acknowledgment by a grantor that he executed the deed, or mortgage, *for the purposes therein expressed* is not sufficient.    The word *"consideration"* required by the statute, is material, and if omitted and no other word of similar import is substituted in the acknowledgment, it is fatal.

VENDOR'S LIEN:    *Waived by taking mortgage*
> When a vendee of land by title bond resells to his vendor and restores to him the bond and possession of the land, he has an equitable lien on the land for the purchase money, but he waives it if he takes a mortgage for it.

APPEAL from *Arkansas* Circuit Court, in Chancery.

Hon. J. A. WILLIAMS, Judge.

*Johnson & Dooley* for appellant.

*Pindalls, contra.*

ENGLISH, C. J. :

This was a bill to foreclose a mortgage, etc., brought in the Circuit Court of Arkansas county, by Charles C. Godden, ad-

ministrator with the will annexed, of Luther F. Frazier, deceased, against William R. Hagler and wife, Caroline, and Edward Johnson.

The material allegations of the bill as amended, are, that on the 31st day of December, 1860, William R. Hagler sold to Luther F. Frazier, the southwest quarter of section 34 T. 4. S. R. 3 W., except five acres in the southwest corner of the tract, for $2,500, of which Frazier paid $1,200 in cash, and gave Hagler two notes for balance of purchase money, one for $500, payable 25th of August, 1861, and the other for $800, payable 1st of April, 1862; and Hagler executed to Frazier a bond to make to him a title on the payment of the two notes, a copy of which is exhibted.

That on the 22d of January, 1862, after Frazier had about paid said notes, he sold said lands back to Hagler for $2,556, payable in five years, took his note for the purchase money, and a mortgage on the land to secure it, and surrendered to him his bond for title, and put him in possession of the land. The note and mortgage with certificates of acknowledgment and registration are made exhibits.

That after Frazier resold the land to Hagler, took said note and mortgage, and put him in possession of the land, he removed to the State of Senoloa, Mexico, and died in 1864, having made a will which was there duly probated.

That on the 10th of March, 1869, complainant Godden was appointed administrator with the will annexed, by the Probate Court of Arkansas county, of Frazier, and duly qualified as such.

That Hagler had paid nothing on the note, and the mortgage remained in force.

That in the year 1865, Hagler being largely in debt, for a pretended consideration conveyed said tract of land (with other lands then owned by him) to one Thomas Quinn. That in

making said pretended sale and conveyance, he combined with said Quinn, defendant Edward Johnson and others, to defraud his creditors; and in furtherance of this design, Quinn, for a nominal consideration, conveyed said land to Johnson, and he conveyed half of the land to Hagler's wife, Caroline. That Quinn paid Hagler nothing for the land, and that neither Hagler nor his wife paid Johnson any consideration for the half of the land conveyed by him to the wife.

Prayer for decree against Hagler for the amount of the note, principal and interest, secured by the mortgage of the land, that the debt be declared to be a lien on the land, and that the mortgage be foreclosed, and the land sold to satisfy the decree, etc., and for other relief, etc.

JOHNSON answered the bill. He admits the execution of the note and mortgage by Hagler, but denies that the mortgage and certificate of acknowledgment are sufficient to defeat his rights, etc.

Avers that the note and mortgage were in part for money won by Frazier of Hagler at the gaming table—that they were for a gambling consideration, etc.

Denies all fraud, collusion or confederation with Hagler and wife, or others, to defraud the creditors of Hagler. Denies that he purchased the lands of Quinn, although the deed was executed to him by Quinn. Avers that he purchased the land of one McEwen, who had advanced money to Quinn to enable him to pay Hagler for the land, and that Quinn purchased the land of Hagler nearly eighteen months before respondent purchased it, and was in possession of it, receiving the rents and profits when respondent purchased. That he purchased the land in good faith and for a valuable consideration, knowing at the time that Frazier had won the amount of the note of Hagler, and that the note and mortgage were executed for a gambling consideration.

The appearance of Hagler and wife was entered by an attorney claiming to represent them, and a decree *pro confesso* rendered against them. Afterwards, the decree was set aside on their motion, and a showing that process had not been served upon them, and that they had not authorized their appearance to be entered.

HAGLER answered the bill. He admits that he executed the note and mortgage to Frazier, but avers that part of the consideration thereof was for money won of him by Frazier at gaming.

Denies all fraud or collusion with Quinn, Johnson and Mrs. Hagler to defeat or defraud his creditors. Denies that he ever sold the land to Johnson, or that he knew any thing of the sale until some time after it was made.

Admits that he was considerably in debt, but denies that he sold the land to Quinn for a pretended consideration, and avers the truth to be that he sold to him for a valuable consideration.

A subpœna was issued for Mrs. Hagler, and returned by the sheriff served by leaving a copy with her husband. An alias was issued, upon which a like return was made. She did not answer.

The cause was submitted on the pleadings and exhibits, and the depositions of witnesses on file, and the court found, *first:* that there was no consideration from Quinn to Hagler for the deed executed by Hagler and wife to Quinn for the tract of land in controversy, and that the deed was void. *Second,* that the consideration from Frazier to Hagler for "said land, was good and valid," wherefore the court found the issues in the cause for complainant.

The court decreed that the deed from Hagler and wife to Quinn be canceled and held for naught; that complainant recover of Hagler the amount of the principal and interest due.

upon the note, and declared the same to be a lien upon the land in controversy; that the mortgage be foreclosed, and condemned the land to be sold by a commissioner to satisfy the decree, etc.

Johnson excepted to the decree and appealed to this court.

Hagler did not appeal, and as to him the decree must stand.

1. "All judgments, conveyances, bonds, bills, notes, securities and contracts, where the consideration, or any part thereof is money or property won at any game, or gambling device, or any bet or wager whatever, or for money or property lent to be bet at any gaming or gambling device, or at any sport or pastime whatever, shall be void." *Gantt's Dig.,* Sec. 2987.

The note secured by and described in the mortgage follows:

"$2,556.00. On or before the 22d day of January, 1867, (five years from date), I promise to pay to Luther F. Frazier, or order, the sum of twenty-five hundred and fifty-six dollars, for the S. W. quarter of section 34, township 4 S. range, 3 W., in the county of Arkansas, State of Arkansas, except five acres in the S. W. corner of said quarter. Witness, my hand and seal, this 22d day of January, A. D. 1862.

"Witness:                         "W. R. Hagler, [seal.]"
        Jos. H. Maxwell."

The note being fair on its face, and the mortgage upon the land described in the note being in the usual form and duly executed, the burthen of proving that part of the consideration of the note and mortgage was for money won by Frazier of Hagler at gaming, was upon appellant, who claimed part of the mortgaged premises under the mortgagor, and pleaded the gaming act. He was obliged to establish the defense by clear and strong proof. 1 *Jones on Mortgages,* Secs. 622, 644.

It was proven that Frazier, while he lived about DeWitt, near which the land in controversy is situated, was a profes-

sional gambler, and that he and Hagler frequently played poker, and that he was an overmatch for Hagler, who seems to have had a passion for gaming, though not of that profession.

Hagler, whose deposition was taken for the defense, is the only witness who swore directly, positively and accurately that part of the consideration of the note and mortgage was for money won of him by Frazier at gaming.

He swears that when he purchased the land in controversy back from Frazier they had a final settlement; that Frazier had paid him on the land, a negro woman at $800, in money $200, and that he allowed Frazier for improvements made by him on the place $600, making in all $1,800; that he owed Frazier $756 for money won of him by Frazier at poker, and that this sum was included in the note, which, added to the $1,800, made $2,556, the amount of the note, and the mortgage on the land was given to secure it.

His deposition was taken on the 5th day of March, 1873,

By Sec. 22, Art. VII. of the Constitution of 1868, then in force, it was provided that: "In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with, or statement by, the testator, or intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court."

This provision was continued in force by the schedule of the present Constitution, Sec. 2, subject to amendment or repeal by the Legislature.

Here, without being called by the administrator of Frazier, or required to testify by the court, Hagler testified on his own behalf, directly to a transaction between himself and Frazier, material to the issue, when Frazier was dead and no longer

able to speak for himself.   He sought to destroy a solemn instrument executed by himself to Frazier when living, and expressed on its face to be for purchase money of land, by swearing that there was included in the instrument a sum of money won of him by Frazier at a game of cards.

We suppose the court below in making up its finding upon the gaming issue, did not attach any weight to the above portion of Hagler's deposition, and we shall certainly not reverse the decree on this issue, so far as it affects appellant, who claims the benefit of the same defense by regarding Hagler's statement as true, and making it counterbalance other evidence in conflict with it.

There were other depositions vaguely tending to prove that the note was to some extent tainted with a gaming consideration, but the widow, a married daughter and a son of Frazier, who lived with him on the land in controversy at the time he resold it to Hagler, positively deposed that Hagler agreed to pay Frazier $2,500 for the land, and $56 for corn, fodder and household furniture, and that the note was made for the two sums.   It was proven that the daughter and son were but children from nine to eleven years old when the transaction occurred, but they were not otherwise impeached, nor were they cross-examined as to the sources of their knowledge.

Upon the whole we find no such preponderance in favor of the defense, on the gaming issue, as to warrant us in reversing the finding of the Chancellor.

2.   The mortgage was recorded 23d January, 1862, the day after its execution, upon a defective acknowledgment.

The certificate of acknowledgment taken before the clerk of the Circuit Court of Arkansas county, is as follows:

"Personally appeared before me, Joseph Maxwell, clerk, etc., etc., William R. Hagler, the grantor in the foregoing mortgage, who, being personally well known to me, acknowl-

edged that he signed, sealed and delivered the foregoing instrument as his own act and deed, and *for the purposes therein expressed*.

"In testimony whereof," etc.

In order to admit the mortgage to record the certificate should have shown that the grantor acknowledged that he had executed the same "for the *consideration* and purposes therein mentioned and set forth." *Gantt's Digest*, Secs. 846, 4287.

In the above certificate the material word " *consideration*" is omitted, and no other word of similar import is used, and the omission is fatal, as indicated in the case of *Blackburn et al.* v. *Randolph et al.*, M. S., where there was a like omission. See also *Little, trustee*, v. *Dodge, guardian, etc.*, 32 Ark., 458, and previous cases cited.

The mortgage, though good between mortgagor and mortgagee, was not a valid lien upon the lands as against subsequent purchasers, etc., because not legally recorded. *Jarratt et al.* v. *McDaniel et al.*, 32 Ark., 602, and previous cases cited.

When Hagler sold the land to Frazier he retained the legal title, and by means of the bond for title conveyed to him an equitable title. When Frazier resold the land to Hagler, took his note for purchase money and put him in possession, had he done nothing more he would have had an equitable lien upon the land for the purchase money, which would have been valid against any person subsequently purchasing the land of Hagler with notice. But by taking the mortgage from Hagler upon the land to secure the payment of the note, he waived his equitable lien, and had to rely upon the mortgage ; and failing to procure the mortgage to be properly acknowledged and legally recorded, it was no lien against a subsequent purchaser. *Neal* v. *Speigle*, M. S.

The deed from Hagler and wife to Quinn is not in the transcript, though it must have been before the court below at the

hearing, for the decree recites that it bore date on the 3d day of November, 1875, and the court found that it was executed without consideration, and held that it was void, not only as to Quinn but as to other persons claiming through or under the deed.

On this branch of the case Hagler testified as follows :

"Edward Johnson has made a deed to one-half of the place to my wife, Caroline. The consideration was understood between Quinn and myself, and also by Johnson and myself. Johnson only complied with the contract between Quinn and myself. When I made the deed to Quinn for the land in controversy, it was the express agreement and understanding that Quinn was to deed one-half of the land back to my wife. I did not pay Johnson, nor did my wife pay him anything for one-half of the land. Johnson, in making the deed to my wife, was only complying with the agreement entered into between Quinn and myself. I came to DeWitt to bring suit against Johnson for the land when he deeded my wife one-half of the land as a compromise. The contract between Quinn and myself was that he was to pay the taxes on all of the lands mentioned in the deed from myself to him for three years. He never made me a deed back for the lands as he agreed. He drew a pistol on me, and told me I could help myself. It was after Johnson bought the land that Quinn told me I could help myself. Next week after this Quinn was killed. I did receive a consideration for the lands—that is, Quinn agreed to pay the taxes on the lands, and I consider that a consideration. I did not receive any money in hand for the land. When I received the deed from Johnson I considered it a consideration, and the agreed consideration for the land and a compliance with the contract between Quinn and myself."

We understand from this confused statement that Hagler conveyed to Quinn the tract of land covered by the mortgage,

and other lands, upon the consideration that Quinn was to pay the taxes upon all of the lands embraced in the deed, for three years, and re-convey to Mrs. Hagler one-half of the lands; that Quinn, without making the promised conveyance to Mrs. Hagler, sold and conveyed the lands to Johnson, who, in compliance with Quinn's agreement, conveyed half of the lands to Mrs. Hagler.

It appears that at the hearing of the cause Johnson read in evidence a deed from Quinn and wife to him bearing date 18th November, 1866, which, with the certificates of acknowledgment and registration, is copied in the transcript.

By this deed the grantors, in consideration of 2,000 pounds of lint cotton to be delivered to them at DeWitt by Johnson, on or before the 1st of January, 1868, bargained, sold, released and quit-claimed to Johnson all their right, title and interest in and to the tract of land described in the mortgage; and also lots two and three in the S. E. corner of S. E. quarter of section 33, T. 4, S. R. 3 W., warranting only against persons claiming through the grantors.

It must be borne in mind that this is not a creditor's bill— not a bill to set aside conveyances made to hinder, delay or defraud a creditor, and to subject property thus conveyed to the satisfaction of a judgment or decree of the creditor. (*Murry* v. *Anthony*, 11 Ark., 441; *Williams* v. *Bizzell et al.*, Ib., 716), but it is a bill to foreclose a mortgage, in which the complainant asserts that the mortgage is a lien upon the land covered by it prior and superior to the title of the subsequent purchasers, who are made defendants, and prays a decree against the mortgagor for his debt, and that the land may be condemned to be sold to satisfy the decree.

If the mortgage had been properly acknowledged and recorded, it would have been a valid lien upon the land, and good against all persons subsequently purchasing from or

38

under the mortgagor, regardless of the considerations of their deeds. But the mortgage was not legally put upon record, and was valid only between the parties, and was not a lien as against any subsequent purchaser.

This not being a creditor's bill, it is not necessary to inquire or to decide whether the deed from Hagler to Quinn was made without consideration and for the purpose of defrauding Hagler's creditors, and whether the deed from Quinn to Johnson was infected with the same fraud.

It is alleged in the bill that Johnson had conveyed one-half of the land in controversy to Mrs. Hagler. This allegation Johnson does not deny; he denies only the fraud charged against him by the bill. It was also proven by the deposition of Hagler that Johnson had conveyed one-half of the land to Mrs. Hagler. What her rights may be we have no occasion to inquire in this appeal. She did not answer the bill, nor appeal from the decree ; nor need we decide whether she is bound by the decree upon the facts disclosed by the record. Whether Johnson conveyed to her a particular half, or only an undivided half of the tract of land in controversy, does not appear. The answers, as well as Hagler's deposition, are loose and inaccurate.

The decree of the court below must be so modified as to exclude from the foreclosure, condemnation and sale, the one-half of the land owned and claimed by Johnson, and in other respects the decree must stand as rendered below.