SAMUEL G. M. GATES v. THE RIFLE BOOM COMPANY.

*Logs and logging—Trespass—Lien for labor—Trover and conversion—Confusion of property—Right of selection—Evidence.*

1. A trespasser, however *innocent*, acquires no *property* in logs cut from the land of another, nor lien thereon for the value of the labor and expense of such cutting, nor can he recover such value in an action of trover or *assumpsit*.

2. The conversion of trees into saw-logs by a trespasser does not change the *title* to the property, nor destroy its *identity*, and his subsequent intermingling of the logs with his own, although innocently done, as was the cutting, cannot change the rights of the owner, who may reclaim from the common mass a quantity equal in *amount* to the logs cut, and of an average *quality*.

| 70 | 309 |
| 71 | 390 |
| 70 | 309 |
| 78 | 510 |
| 70 | 309 |
| 89 | 200 |
| 70 | 309 |
| s38NW | 245 |
| 131 | 486 |

3. If a party cuts from the timber of *another*, and marks and intermingles them with his own in *good faith*, believing himself to be the owner, and the *true* owner in reclaiming them takes *more* than his *share*, or as much or more in *quantity*, but of a better average *quality*, he is liable for the *excess* in an action of trover.

4. The owner of standing timber has a right to it as it is, and to keep it uncut if he so desires; and no man can go upon his land and convert such timber into logs, and charge the owner for the labor expended against his will, no matter how innocently the trespass is committed.

5. If the owner of standing timber cut into logs by an *innocent* trespasser sees fit to bring trespass or trover for its value instead of reclaiming his property, he thereby elects to receive a just compensation for said *timber*.

6. Statements made by an agent *after* the commission of a trespass upon the lands of his principal, whom he had no authority to bind thereby, can have no bearing upon the *good faith* of the trespasser, especially in the absence of proof that the principal was informed of such statements.

Error to Bay.    (Green, J.)    Argued April 20, 1888. Decided May 18, 1888.

Trover.    Plaintiff brings error.    Affirmed.    The facts are stated in the opinion.

*Holmes & Collins,* for appellant, contended as stated in the opinion, and also:

Where the intent of a party in doing an act is in issue, he may himself testify to such intent; citing Abbott, Trial Brief, 93 ; *McKown v. Hunter,* 30 N. Y. 625 ; *Cortland Co. v. Herkimer Co.,* 44 Id. 22; *Smith v. Higgins,* 16 Gray, 251; *Watkins v. Wallace,* 19 Mich. 76 ; and his declarations while doing the act are competent evidence ; citing *Reeder v. Holcomb,* 105 Mass. 93; as are the acts and declarations and expressed opinions of the parties or their agents, being a part of the *res gestae* ; citing 6 Wait, Act & Def. 119, 120 ; *McKown v. Hunter,* 30 N. Y. 625; *Bank v. Kennedy,* 17 Wall. 19; *Sherman v. Kortright,* 52 Barb. 267.

*Hanchett, Stark & Hanchett,* for defendant, contended:

1. As stated in the opinion as to the right of the owner to reclaim logs, etc., citing authorities cited in opinion.

2. The doctrine of " confusion of goods " applies to saw-logs as well as other property; citing *Hesseltine v. Stockwell*, 30 Me. 237; Cooley, Torts, p 54; and the innocent owner is at least entitled to take from the common mass a quantity *equal* to his own; citing Cooley, Torts, 53, 54; 2 Kent, Com. 364, 365; 1 Suth. Dam. 163; *Stephenson v. Little*, 10 Mich. 441, 445, 449; *Wetherbee v. Green*, 22 Id. 314, 317, 318; *The Idaho*, 93 U. S. 585; *Stearns v. Raymond*, 26 Wis. 74; *Hesseltine v. Stockwell*, 30 Me. 237; *Bryant v. Ware*, Id. 295; *Smith v. Morrill*, 56 Id. 566; *Ryder v. Hathaway*, 21 Pick. 306; *Stuart v. Phelps*, 39 Iowa, 20; *Adams v. Wildes*, 107 Mass. 125.

3. Of above cases the following are where the timber was cut willfully or by mistake, and mingled with the trespasser's logs: 10 Mich. 441; 26 Wis. 74; 30 Me. 237, 295; 21 Pick. 306; 56 Me. 566.

MORSE, J. The plaintiff, in his lumbering operations, in 1882 cut over the line upon the adjoining land of Rust Bros. & Co., and thereby secured and marked as his own about 135,000 feet of logs belonging to the latter. These logs were mixed with the other logs of plaintiff, and banked on the west branch of the Rifle river. They were not run out the following spring, but remained in the rollway during the summer and fall of 1883. In that year Rust Bros. & Co. sent some scalers where the plaintiff's logs were, who selected out, as best they could, logs of the same quality as those taken from the Rust lands by plaintiff, and about the same quantity, and marked them with the stamp of Rust Bros. & Co. Such logs then bore two brands, the mark of plaintiff, "C. O. W.," and the Rust mark, " 7 R. 7."

Under the usual contract by plaintiff with the defendant boom company, these logs, intermingled with other logs of the plaintiff, were driven down the stream in the summer of 1884, and received in the defendant's boom. The defendant was notified by Rust Bros. & Co. not to deliver the logs with the double marks upon them to plaintiff. The boom company thereupon delivered the double-marked logs, about 155,000 feet, to Rust Bros. & Co., who, finding that more were marked by their scalers than they were entitled to, returned to plaintiff 20,590 feet of the same.

The plaintiff, after demanding these logs of the boom company, and after its refusal to deliver them, brought this suit in trover in the circuit court for the county of Bay. The cause was there tried before a jury, and verdict and judgment passed for the defendant. The plaintiff in this Court assigns as error the following instructions given by the court:

"If the plaintiff cut the logs innocently, supposing them to be upon his own land, and mixed them with his own so that they could not be identified, and after they became mixed with his own, so that the logs cut from Rust Bros & Co.'s lands could not be identified, then Rust Bros. & Co. had the right to select from the common mass a quantity of an average quality of their own, equal to the quantity taken from their land."

And also, in the same connection, after having stated the rule as to willful trespasses, instructing the jury further as follows:

"But a different rule prevails where a party innocently mingles his property with that of another, and where it is undistinguishable, and where the general quality and character of the property is the same, as in the case of the same kind of logs, white pine, if you please, and of the same general quality as near as may be. There, if the logs are confused, neither party loses his own. Both parties have a right to their own; and, neither party being able to distinguish his own, the party whose property has been mingled with another's property by the act of that other party may take so much of the common mass as he has in it."

It was claimed by the plaintiff upon the trial, and he so testified, that the logs taken by Rust Bros. & Co. were of greater value in quality than those cut by him from their lands. The quantity cut by him on the Rust lands was not claimed to be less than the quantity taken by Rust Bros. & Co. It therefore became material to ascertain, upon the trial, whether the plaintiff was a willful trespasser, or cut the logs innocently, in good faith, believing that he was within the lines of his own land.

The court instructed the jury as to the difference between

a willful and an unintentional trespass, stating to them, in substance, that if the trespass was a willful one, if Gates knew he was cutting the logs of Rust Bros. & Co., and so, knowing them not to be his, intermingled them with his own that they could not be distinguished, Rust Bros. & Co. had a right to take more than their own; and if, in order to get all that belonged to them, and without intending to take more than belonged to them, they did take a better quality of logs than they had lost, if they did not make the selection with that view, the plaintiff could not recover for such excess in quality; but if the plaintiff cut the logs, and marked and mingled them with his own, in good faith, believing them to be his own, then, if Rust Bros. & Co. took more than they were entitled to, the plaintiff might recover the excess.

The counsel for the plaintiff very ably and forcibly contended in the argument here that, if the plaintiff was innocent of any wrong, he was entitled to recover in this action, if Rust Bros. & Co. took no more logs in quality or quantity than were cut upon their lands, the difference between the value of the logs and the value of the standing timber; that Rust Bros. & Co. could claim no more than the value of the stumpage. He argues that if Rust Bros. & Co., under the same circumstances, had sued the plaintiff in trover for the value of the timber so cut, the measure of damages would have been the value of the stumpage, and that they could not have recovered what they obtained in this suit, the value of the logs, representing not only the value of the standing timber, but also the worth of the labor of plaintiff added thereto; citing *Ayres v. Hubbard*, 57 Mich. 322 (23 N. W. Rep. 829.) The object of the law being, in both cases, to enable the party deprived of his property to receive compensation therefor, he asks, "Why should the man who strictly follows the law, and adopts a legal course of procedure" to obtain his property, be in a worse position, and receive less, than he who uses force or strategy to recover possession of

his property? He claims that in this case the plaintiff added innocently to the value of this timber the cost of cutting and putting in the logs, which was the sum of $2.25 per thousand feet, and also the value of the driving and booming charges. He estimates this value at over $300.

But in the first place it seems to me that this amount, the value of the plaintiff's labor and expenses upon the logs, could not be recovered in an action of trover. The logs were still the property of Rust Bros. & Co. The trespasser, however innocent, could acquire no property in these logs, nor could he acquire a lien upon them for such labor and expense. The conversion of trees into saw-logs by a trespasser does not change the title to the property, nor destroy the identity of the same. The owner of the land is the owner of the logs, and the trespasser has no title to them. Therefore when he regains his own, he has converted no property of the trespasser to his own use. *Stephenson v. Little*, 10 Mich. 433; *Final v. Backus*, 18 Id. 218, 232; *Isle Royale Mining Co. v. Hertin*, 37 Id. 337; *Arpin v. Burch*, 68 Wis. 619 (32 N. W. Rep. 681); *Winchester v. Craig*, 33 Mich. 205; *Grant v. Smith*, 26 Id. 201; *Tuttle v. White*, 46 Id. 485 (9 N. W. Rep. 528).

In the case of *Mining Co. v. Hertin, supra,* the trespasser sought to recover in a special count in *assumpsit* for the value of his labor expended in cutting the wood. In this case, if any action would lie for the labor of cutting the logs and the expense of getting them into the stream and down to the boom, it would seem that the plaintiff's remedy would be in *assumpsit.* But in the case above referred to it was held that he could not recover the benefit of his labor at all.

There can be no doubt that the rule is well settled in this State that, if Rust Bros. & Co. had taken possession of these logs while they were lying upon their lands, they would have been entitled to them as they were, and that no claim could have been made against them by the plaintiff for the labor

and expense of cutting them. The identity of the timber would not then have been destroyed. And the subsequent. intermingling of these logs with the logs of plaintiff, although innocently done, could not change the rights of the owners. The evidence shows that between the time Rust Bros. & Co. discovered the trespass, and the time they took possession of the logs by marking them, no labor or money was expended by the plaintiff upon them. Therefore it follows that, as this case stood, the plaintiff had no claim upon Rust Bros. & Co. that he could enforce in this action, unless they took possession of a better quality of logs than he cut upon their premises, and the same amount or more in quantity, and his trespass and intermingling of the property was innocently done. And the court was right in his interpretation of the law as to innocent trespassers.

The seeming injustice pointed out in the argument of the plaintiff's counsel is not an injustice, but the result of the election of the owner to take less than he is by the law entitled to.

The owner of standing timber is not only entitled to the timber, but he has a right to it as it is, and to keep it uncut if he so desires. No man, however innocently he may do it,. can go upon his land and convert the standing trees into logs, and charge him for the labor thus expended against his will,. and perhaps against his real benefit. He may prefer to have the timber to stand, and if left standing a few years may bring him an immense profit. Such instances have not been rare in the history of pine timber in this State. The supposed enhancement of his property by the labor of the trespasser may thus turn out to be a positive injury. There is no injustice in holding that the trespasser must lose the labor he has expended in converting another's trees into logs. Such trespasses, though casual and not willful, are ordinarily,. as was the trespass in this case, the result of negligence upon the part of the trespasser, and there is no good reason why

he should be recompensed for labor and expenses incurred in the trespass when it might have been avoided by proper diligence. The owner has the right to reclaim his logs, but, if he sees fit to bring an action of trespass or trover instead of regaining his property, he voluntarily puts himself within the rule of damages prevailing in such actions, and thereby elects to receive only a just and fair compensation for his property as it was before the trespasser intermeddled with it.

The trespasser cannot complain of this, neither can he complain if he elects to take his property if he can find it. As was well said in *Mining Co. v. Hertin, supra*:

37 Mich 337
"Nothing could more encourage carelessness than the acceptance of the principle that one who by mistake performs labor upon the property of another should lose nothing by his error."

The further and only question in the case is the alleged error of the circuit judge in rejecting the offer of the plaintiff to prove by Harvey Parker that while said Parker was foreman for the plaintiff, and was at work on the 80-acre tract adjoining the 40-acre tract claimed by Rust Bros. & Co., and before all of the logs had been hauled from the strip of real estate in dispute in this case, said McTavish and Gates then being at the camp, McTavish, while there, made no complaint or objection as to where they were cutting; made no claim that plaintiff and his men had committed a trespass; and in answer to a question by said Parker, after Gates had gone away, McTavish said the line plaintiff's men had cut to was all right. And in sustaining the defendant's objection to the following question to the said Harvey Parker:

"Did you have any talk with McTavish about the line to which you had cut?"

The counsel for the plaintiff claim that this evidence was material and competent as bearing upon the good faith of the plaintiff in cutting the timber; that it does not appear from

the verdict of the jury whether they found such trespass willful or not.

It was conceded that Rust Bros. & Co. took about the quantity of logs they were entitled to, but if they took a much better quality, as plaintiff claimed they did, and the trespass was found by the jury to have been an innocent one, the plaintiff's counsel claim that there should have been and probably would have been a verdict in his favor for the value of the excess in quality so taken.

In determining the competency and materiality of the proposed proof, it will be necessary to enter somewhat into the facts of the trespass. McTavish was a land-looker, and a woodsman and general foreman, looking after the different lumber camps of Rust Bros. & Co., and looking after trespasses committed upon their lands, but not having any authority to locate or agree upon the boundaries of such lands. The plaintiff called upon McTavish, before he did any cutting, and asked him if he would go with him and see if they could not locate the line between his land and that of Rust Bros. & Co. He does not state that he supposed McTavish had any authority to locate the line. He says:

"I had known him a good many years, and knew him as a man in the employ of the Rusts. ♦

"Q. You knew he was their agent and their woodsman?

"A. I believed him to be a good land-looker. I asked him if he would go with me and see if we could locate the line between 28 and 29 north of the quarter post. He said he knew where the south section corner of the section was. 'We will go there and see if we can find it.'"

They went up into the woods, and undertook to run out the line. They disagree somewhat in their testimony. As they were pacing on the supposed line the plaintiff did some blazing. McTavish testified that he forbade this blazing, saying to Gates that there was no telling whether they were right or not, as they were running the line out with a pocket compass. He says:

"I told Mr. Gates at the time that there was timber enough along the line, whoever lumbered there first, to have that line established by a surveyor; and he made the remark then that that line would be just a guide for him when he went in there again to know about where he was."

And they agreed that it should be surveyed before it was lumbered. Gates testified that he blazed the line they ran out; that at one point McTavish said:

"'I don't know, we may not be just right here, and perhaps you hadn't better blaze.' I says: 'It will be a guide to us to know where we have come, and I will continue the blazing until you get to the corner.'"

That McTavish said that he was satisfied that was the right line, and said further:

"That line is as correct a line as we can get through here; but as timber is thick on the line down below between you and Rust you ought to have a surveyor run a compass course from this corner to this quarter post to be sure, as I have dodged a little in traveling north. We have come as straight as we could."

To this, Gates says, he assented. No line, however, was run by a surveyor until after the cutting.

Harvey Parker was the foreman of the plaintiff. McTavish was asked, on cross-examination, if he did not have a conversation with Parker about this line, and answered that he did not remember it, but said that he stayed one night at his camps, and presumed he told Parker that the plaintiff had cut to the line that he and Gates run. Denied ever stating to him that the cutting was all right, or that they had the right line. This conversation, if any was had, was after the cutting of the logs. The offered evidence of Parker was rejected at first by the court upon the ground that it was not competent because it took place after the cutting. Parker afterwards testified that at the time of the talk the timber was all cut off of this strip belonging to the Rusts, and that some of the logs had been taken off; that Gates was not

present when the conversation took place; and there was no evidence offered to show that Gates ever knew of the talk. Thereupon the court ruled that it was not material.

We think the court did not err in the ruling. McTavish had no authority to bind the Rusts, and what he might have said after the trespass was committed could have no bearing upon the question of the good faith of the plaintiff, especially when there was no evidence that Gates was informed of what McTavish said. Nor was it admissible as impeaching testimony, not being material to the issue.

The judgment of the court below must therefore be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred. CAMPBELL, J., did not sit.