## EATON *v.* LANGLEY.

## Opinion delivered July 9, 1898.

1. REPLEVIN—FORM OF JUDGMENT.—A successful plaintiff in an action for the recovery of personal property is entitled to judgment for delivery of the property, or its value, if a delivery can not be had; and his right to this judgment is not affected by the fact that he failed to claim a delivery of the property before judgment, but ordered the sheriff to return the order of delivery without service. (Page 450.)

2. SAME—DAMAGES.—In replevin for standing timber cut by an innocent trespasser and converted into cross-ties, the owner is entitled to judgment for delivery of the timber so converted, notwithstanding its value has been increased six times; but, if delivery cannot be made, the measure of the damages recoverable is the value of the cross-ties less the labor expended on them, provided such expense does not exceed the increase in value. (Page 451.)

Appeal from Greene Circuit Court.

FELIX G. TAYLOR, Judge.

*Block & Sullivan*, for appellant.

The change from standing timber to cross-ties was not such a change of identity as will prevent the original owner from maintaining replevin, whether the change was wrought innocently or wilfully. 44 Ark. 210; 55 Ark. 307, 310; 78 Ky. 481; 37 Mich. 332; 70 *id.* 309; 115 N. C. 85. The recovery of the property is the primary object of the suit, and the alternative judgment for its value is not to be rendered for the purpose of allowing the wrongdoer to elect to deliver the property to pay for it. 50 Ark. 303. The facts are fully before this court, and judgment should be pronounced here. 56 Ark. 213; *id.* 8.

*Luna & Johnson*, for appellee.

Where the trespass is the result of inadvertence or mistake, the value of the property, when first taken, is the measure of damages. 106 U. S. 230; 22 Mich. 311; Sedg. Meas. Dam. § 538; 26 Am. & Eng. Enc. Law, 676; 20 *id.* 1128; 93 Am. Dec. 739; 42 Minn. 541; S. C. 44 N. W. 1027. It is the duty of this court, under § 1064, Sand. & H. Dig., to remand for new trial all cases except those where the evidence discloses that the action could not be maintained or a defense made. 56 Ark. 50; *id.* 255; 57 Ark. 461.

BATTLE, J. P. A. Eaton alleged in his complaint that he was the owner of five thousand cross-ties, of the value of $750; that they were in the possession of H. G. Langley; that he was entitled to the immediate possession of the same; and asked for the possession thereof, or, if that could not be obtained, their value. After filing with the clerk of the circuit court the affidavit required in such cases, he sued out an order for the delivery of the cross-ties to himself; also a summons for Langley. He caused the summons to be served upon the defendant, but directed the sheriff to return the order of delivery without service, which was done.

The defendant answered the complaint by denying the allegations therein and alleging that he was the owner of the ties.

The issues in the action were tried by the judge and jury. Upon the evidence adduced, the jury found a special verdict,

and the judge filed his conclusions of fact, both of which are stated by the judge as follows:

"From the evidence in this case the court finds as follows: (1) That the ties in controversy were cut by the defendant from the east half of section thirty-five, township seventeen north, range three east. (2) That the plaintiff was the owner of said land and the timber thereon at the time the ties in controversy were cut. (3) That said ties were cut without authority from the plaintiff or any one representing him, and that in so cutting the said timber the defendant was a trespasser. (4) That the defendant in cutting said timber was acting under a *bona fide* belief that he was the owner of the said timber, and had a right to cut it, and that he was an innocent and not a wilful trespasser therein.

"And from the answers of the jury to the special interrogatories the court finds: (5) That, at the time this action was begun, the defendant had 3,500 cross-ties, which he had made from said land while the plaintiff was the owner thereof, under the foregoing circumstances. (6) That said ties, at the beginning of this action, were of the value of 12½ cents each. (7) That the timber from which the same were made, while standing, was of the value of 2 cents per tie."

Upon these findings of facts the court rendered a judgment as follows: "It is therefore ordered, considered and adjudged by the court that the plaintiff have and recover of and from the defendant the sum of seventy dollars and all costs of this cause, and that, further, in case the sums of money above mentioned, together with the said costs, are not paid within ten days from this date, the plaintiff shall have and recover of the defendant the possession of the 3,500 cross-ties situated on the east half of section thirty-five in township seventeen north, range three east, and for which writ of delivery in this case may issue."

After filing a motion for a new trial, which was overruled, and a bill of exceptions, the plaintiff appealed.

In an attempt to sustain the judgment of the circuit court, appellee insists that this is not an action of replevin or detinue, "but is in the nature of an action of trover or trespass under the common law." But the name of it is immaterial. The code abolished all forms of action. Let its name be what it may, it

is unquestionably an action to recover the possession of specific personal property. In such actions the statute provides that the "judgment for the plaintiff may be for the delivery of the property, or for the value thereof, in case a delivery cannot be had, and damages for the detention." Sand. & H. Dig., § 6398. The right to this judgment is in no wise affected by the issue or failure to issue an order of delivery, which is only necessary to enable the plaintiff (upon the execution of the proper bond) to obtain the immediate possession of the property at the beginning or during the progress of the suit, or force the defendant to give bond for its retention, and for no other purpose. Sand. & H. Dig., § 6383, *et seq.*

The cross-ties in controversy are the product of the timber of appellant and the labor of the appellee. The latter, honestly believing that he was the owner of the timber, converted it into the cross-ties. The material used in making each tie, as it was in the tree, was worth two cents; and, as it is, is worth twelve and a half cents. Under these circumstances, is appellant the owner of the ties, and entitled to their possession?

As a general rule, an owner cannot be deprived of his property without his consent or operation of law. "If unauthorized persons have bestowed expense or labor upon it, that fact cannot constitute a bar to his reclaiming it, so long as identification is not impracticable. But there must be a limit to this right." Mr. Justice Blackstone lays down the rule very broadly that if a thing is changed into a different species, as by making wine out of another's grapes, oil from his olives, or bread from his wheat, the product belongs to the new operator, who is only to make satisfaction to the former proprietor for the materials converted. 2 Bl. Com. 404. Many authorities have followed this rule, while others have held that, in the case of a wilful appropriation, no extent of conversion can give to the wilful trespasser a title to the property, so long as the original materials can be traced in the improved article. *Weatherbee* v. *Green*, 22 Mich. 311.

In *McKinnis* v. *Railway*, 44 Ark. 210, and *Stotts* v. *Brookfield*, 55 Ark. 307, it was held that the owner of timber which had been taken and converted by a wilful trespasser into cross-ties may recover the ties or their value in an action of replevin

against the trespasser. In the latter case the court said: "While it is difficult to draw from the authorities a rule by which we may determine with certainty what change in the original property converted will destroy its identity, so that replevin will not lie for its recovery, it is settled that the conversion of timber into cross-ties is not such a change, whether the change has been wrought by a wilful or an innocent wrongdoer." But there was no occasion for saying what was said as to innocent wrongdoers. In that case the defendant entered upon the land of plaintiff, and, without his authority or consent, knowing at the time his claim of ownership of the same, cut timber therefrom, and converted it into the cross-ties in controversy. Upon that fact the judgment of the court was based. In neither of these cases was any rule laid down by which the identity of the property can be ascertained.

The authorities generally agree in holding that when a party has taken the property of another in good faith, and, in reliance upon a supposed right, without intention to commit wrong, converted it into another form, and increased its value by the expenditure of money and labor, the owner is precluded from following and reclaiming the property in its new form, if the transformation it has undergone has converted it into an article substantially different. But they have not agreed upon any rule by which it can in all cases be ascertained whether this transformation has or has not taken place. "If grain be taken and made into malt, or money taken and made into a cup, or timber taken and made into a house, it is held in the old English law that the property is so altered as to change the title. * * * But cloth made into garments, leather into shoes, trees hewn or sawed into timber, and iron made into bars, it is said, may be reclaimed by their owner in their new and original shape. * * * Some of the cases place the right of the former owner to take the thing in its altered condition upon the question whether its identity could be made out by the senses." *Wetherbee* v. *Green*, 22 Mich. 318, 319. But the supreme court of Michigan (Mr. Justice Cooley delivering the opinion of the court) said that the test of the senses is unsatisfactory, and that "no test which satisfies the reason of the law can be applied in the adjustment of questions of title to

chattels by accession, unless it keeps in view the circumstances of relative values." It said: "It may often happen that no difficulty will be experienced in determining the identity of a piece of timber which has been taken and built into a house; but no one disputes that the right of the original owner is gone in such a case. A particular piece of wood might perhaps be traced without trouble into a church organ, or other equally valuable article; but no one would defend a rule of law which, because the identity could be determined by the senses, would permit the owner of the wood to appropriate a musical instrument a hundred or a thousand times the value of his original materials, when the party who, under like circumstance, has doubled the value of another man's corn by converting it into malt, is permitted to retain it, and held liable for the original value only. Such distinctions in the law would be without reason, and could not be tolerated. When the right to the improved articles is the point in issue, the question how much the property or labor of each has contributed to make it what it is, must always be one of first importance. The owner of a beam built into the house of another loses his property in it, because the beam is insignificant in value or importance as compared to that to which it has become attached, and the musical instrument belongs to the maker rather than to the men whose timber was used in making it, not because the timber cannot be identified, but because, in bringing it to its present condition, the value of the labor has swallowed up and rendered insignificant the value of the original materials. The labor, in the case of the musical instrument, is just as much the principal thing as the house is in the other case instanced; the timber appropriated is in each case comparatively unimportant." *Wetherbee* v. *Green, supra,* 319, 320.

*Wetherbee* v. *Green,* 22 Mich. 311, was an action of replevin by the appellee against the appellant to recover a quantity of hoops made out of the timber of the former by the latter in good faith, under what he supposed to be good authority. The timber in the tree was worth only $25, and the hoops made out of it were worth $700. The court held that the owner could not recover the hoops, but was entitled to the damages sustained by reason of the unintentional trespass. This decision was

based upon the reason that the hoops were made in good faith, and upon the fact that the value of the timber, as compared to the value of the labor expended in making them, was insignificant.

In *Isle Royale Mining Co.* v. *Hertin*, 37 Mich. 332, the parties were owners of adjoining tracts of timbered land. In the winter of 1873–4 the Hertins, in consequence of a mistake respecting the boundaries, went upon the lands of the mining company, and cut a quantity of cord-wood, which they hauled and piled on the bank of Portage Lake. The next spring the mining company took possession of the wood, and converted it to their own purposes. The wood on the bank of the lake was worth $2.87½ per cord, and the value of the labor expended by the Hertins in cutting and putting it there was $1.87½ per cord, nearly double the value of the timber. After the mining company had taken possession of the wood, the Hertins brought an action against the mining company for the value of their labor expended in converting the timber into cord-wood and placing it upon the bank of the lake. .The court held that they were not entitled to recover. Chief Justice Cooley, the same judge who delivered the opinion in *Wetherbee* v. *Green, supra*, in delivering the opinion of the court, said: "It is on all hands conceded that where the appropriation of the property of another was accidental or through mistake of fact, and labor has in good faith been expended upon it, which destroys its identity, or converts it into something substantially different, and the value of the original article is insignificant as compared with the new product, the title to the property in its converted form must be held to pass to the person by whose labor in good faith the change has been wrought, the original owner being permitted, as his remedy, to recover the value of the article as it was before the conversion. This is a thoroughly equitable doctrine, and its aim is so to adjust the rights of the parties as to save both, if possible, or as nearly as possible, from loss. But where the identity of the original article is susceptible of being traced, the idea of a change in the property is never admitted, unless the value of that which has been expended upon it is sufficiently great, as compared with the original value, to render the injustice of permitting its appropriation by the original owners so gross and

palpable as to be apparent at the first blush.   Perhaps no case
has gone further than *Wetherbee* v. *Green*, 22 Mich. 311, in
which it was held that one who, by unintentional trespass, had
taken from the land of another young trees of the value of $25,
and converted them into hoops worth $700, had thereby made
them his own, though the identity of trees and hoops was per-
fectly capable of being traced and established.   But there is no
such disparity of value between the standing tree and the cord-
wood in this case as was found to exist between the trees and the
hoops in *Wetherbee* v. *Green*.   The trees are not only susceptible
of being traced and identified in the wood, but the difference in
value between the two is not so great but that it is conceivable the
owner may have preferred the young trees standing to the wood
cut.   The cord-wood has a higher market value, but the owner may
have chosen not to cut it, expecting to make some other use of
the trees than for fuel, or anticipating a considerable rise in
value if they were allowed to grow.   It cannot be assumed, as
a rule, that a man prefers his trees cut into cord-wood rather
than left standing, and if his right to leave them uncut is inter-
fered with, even by mistake, it is manifestly just that the con-
sequences should fall upon the person committing the mistake,
and not upon him.   Nothing could more encourage carelessness
than the acceptance of the principle that one who by mistake
performs labor upon the property of another should lose noth-
ing by his error, but should have a claim upon the owner for
remuneration.   Why should one be vigilant and careful of the
rights of others if such were the law?   Whether mistaken or not
is all the same to him, for in either case he has employment,
and receives his remuneration; while the inconveniences, if any,
are left to rest with the innocent owner.   Such a doctrine offers
a premium to heedlessness and blunders, and a temptation by
false evidence to give an intentional trespass the appearance of
an innocent mistake."   See *Grant* v. *Smith*, 26 Mich. 201;
*Gates* v. *Rifle Boom Co.*, 70 *id*. 309.

Judge Cooley, in his work on Torts, lays down the rule
upon this subject in the same words it is stated in *Isle Royale
Mining Co.* v. *Hertin*, *supra*.   Cooley, Torts, (2 Ed.) pp. 59, 60.

Professor Schouler, in his work on Personal property, sums
up the modern doctrine upon this subject as follows:   "Where

the trespass was not wilful, but accidental, as through some mistake of fact, and the materials taken can still be identified, and the labor and materials of the trespasser are not shown to have gone further than the appropriated materials towards producing the present valuable chattel, the owner of the materials is still entitled to the chattel. But where no element of wilfulness or intentional wrong whatever appears on the part of him who applied another's materials, and the identity of those materials has finally disappeared in the new product, or where it can be shown that his own labor and materials contributed essentially much more to the value of the present chattel than those materials which he took without intending a wrong, he shall keep the chattel as his own; making, however, due compensation to the owner of the materials for what he took." 2 Schouler's Personal Property (2d. Ed.), § 37.

On account of the conflict of opinion upon this subject, and the fact that this court is free from the restraints of precedents in respect thereto, we are at liberty to select the rule which is sustained by authority, and is in our opinion the wisest and most just. The rule stated by Judge Cooley comes nearer approaching this standard. The increased value of the original materials furnishes no guide by which the merit of the laborer who has given them their new form can be determined. The increased value is the joint result of the original material and the work and materials expended by the laborer in creating the new form. They may be equal, or the former may exceed the latter in value; and the increased value may exceed the aggregate value of the original materials and that expended upon them. Independent causes may contribute to the increased value. For instance, transportation to a market where the original material is scarce and in great demand may greatly increase its market value, or may diminish such value by the transfer to the place where the supply is greater and the demand is less than it is in the market from which it was shipped. So it cannot be said that the transportation added the increased value. Other causes—supply and demand—affect the value. So may labor change the original material into a new form, and increase the demand for it in that shape, and thereby enhance its value. Why, then, should the person who has made the expenditure

be entitled to the difference between the aggregate value of his expenditure and the original material and the value of the article in its new form? He can lose no more than the value of his labor or other expenditure. His right to the property in its new form should not, therefore, in any case be dependent upon its increased value, but upon the relative values of the original materials and his expenditures upon the same; and this should be considered only when the identity of the original article is susceptible of being traced; and then only when he has acted in good faith and converted it into something substantially different, and the value of the original article, as compared with the value of that expended upon it, is so insignificant as "to render the injustice of permitting its appropriation by the original owner so gross and palpable as to be apparent at the first blush." In addition to the relative values the injury inflicted upon the owner by the trespasser, and the injustice of taking from the former his property, against his will, at its market value, should be considered and compared with the hardship the latter may suffer by the loss of his labor and other expenditures, in determining whether this appropriation would be such gross and palpable injustice as to give the innocent trespasser the right to the property in its converted form, as in *Isle Royale Mining Co.* v. *Hertin*, 37 Mich. 332. In this manner the rights of parties would be more nearly protected, and justice at the same time administered.

The value of the cross-ties in controversy was twelve and a half cents a tie. The value of each in the tree was two cents. The value of the labor expended upon them is not shown, but assuming it to be the increased value of ten and a half cents a tie, the difference between it and the value of the original material is not so great as to make the value of the latter, as compared with that of the former, insignificant, and to make the appropriation of the cross-ties by the original owner to his own use, without compensation, appear, under the circumstances, gross injustice at the first blush. The disparity is not so great as it was in *Wetherbee* v. *Green*, *supra*, in which trees of the value of $25 were cut and taken by one from the land of another and converted into hoops of the value of $700, which was twenty-eight times the value of the trees, while the cross-

ties in this case were about six times; and yet the supreme court of Michigan, in *Isle Royale Mining Co.* v. *Hertin, supra,* said that "perhaps no case has gone further than *Wetherbee* v. *Green.*"

In considering the justice of permitting the appellant to appropriate the cross-ties to his own use, the invasion of his rights and the injury done to him by appellee should not be overlooked. The trees belonged to him. They were standing upon his land, and he had the right to hold them as they were. No one had the right to take them from him, convert them into ties, and force him to accept their value at the time of the conversion. He may have preferred to have them to stand; and, if left standing for a few years, they might yield him great profit, and the enhancement of their value by the labor of appellee might be a poor compensation for the wrong done. But whether he wished to sell or not, it would be gross injustice to permit appellee to force him to sell. He is entitled to the protection of the laws. Deny to him the right to the cross-ties, and force him to accept the value of his timber when appropriated by a trespasser, as it was at the time of the conversion, and he has no adequate protection, The injury inflicted by the trespasser would be borne in part by the innocent owner, and the guilty would escape. "Such a doctrine," as said by Chief Justice Cooley, "offers a premium to heedlessness and blunders, and a temptation by false evidence to give an intentional trespass the appearance of an innocent mistake."

Assuming the trees to be the property of appellant, and taking into consideration the great wrong committed by appellee in cutting them, the deprivation to the appellant of the right to use the same as it might please him, the probable loss occasioned thereby, the fact that the identification of the original material was unaffected by the labor expended, the encouragement that would be afforded to trespassers by allowing them to enjoy the fruits of their labor upon a mere showing of mistake, the protection a contrary policy would afford to the owner of standing trees against heedlessness, carelessness, pretended mistakes, and trespasses, and the importance of pursuing such course to secure such protection,—and comparing the injury inflicted upon the appellant by the appellee, and the

injustice of taking from the former his property against his will, with the hardship the latter may suffer by the loss of his labor, we think it would be lawful and right to allow appellant to recover the cross-ties, and to impose upon the appellee the the consequences of his own carelessness.

But appellant has not obtained possession of the cross-ties. In the event he cannot do so, he is entitled to the value of the property he has lost. How is this value to be estimated? This question is not beset with the difficulties which attend the right of recaption. When the appellant sued for the possession of the cross-ties, he was entitled to their possession, unless he had lost his property by the wrongful act of another. If entitled to retake it in its new form, it must be taken as he found it, though enhanced in value by the labor of appellee. The ties cannot be restored to their original form. The appellee cannot force the appellant to become a debtor to him for the value of his labor, nor demand compensation for his voluntary additions to the value of the trees converted into ties, without the assent of the appellant. He cannot impose any conditions upon the right to retake them. The question, therefore, being whether the appellee shall lose his labor, or the appellant lose the right to take his property, the law decides in favor of the latter. But, in determining the compensation the appellant shall receive as the value of his property which has been wrongfully converted, the difficulty does not arise. The value of the property of the owner, which has been converted, can be ascertained and fixed without including therein the labor expended upon it. Hence the law protects the unintentional trespasser in such cases by limiting the right of the owner to recover. *Peters B. & L. Co.* v *Lesh*, 119 Ind. 98; *Heard* v. *James*, 49 Miss. 236; *Herdic* v. *Young*, 55 Pa. St. 176; *Single* v. *Schneider*, 30 Wis. 570; 2 Sedgwick, Damages (8 Ed.), § 534; *Isle Royale Mining Company* v. *Hertin*, 26 Am. Rep. pp. 525, 530. As to the extent of this limitation, the authorities are not agreed. But we think that, inasmuch as this is an exception to the general rule, made for the purpose of protecting the unintentional trespasser, it should be allowed to prevail only to the extent it is necessary to give protection, and that the owner, in actions for the possession of personal

property in the new form into which has been converted inadvertently, under a *bona fide* but mistaken belief of right, "in case a delivery cannot be had," is entitled to recover the value of the property in its new form, less the labor and material expended in transforming it, provided the expenditures do not exceed the increase in value which was added to the transformation, in which event he should recover the value of the property in its new form, less the increase. *Weymouth* v. *Chicago & Western Railway Co.*, 17 Wis. 550. Some courts hold that the owner, in such cases, should recover the value of his property in its new form, less the expense incurred in converting it into such form and increasing its value. *Goller* v. *Fett*, 30 Cal. 482; *Naye* v. *Yappen*, 23 Cal. 306; *Herdic* v. *Young*, 55 Pa. St. 176. But we do not think this is a correct rule in all cases, for the expense may in some cases exceed the increase in value, and in that event the rule would require the owner to pay for something that he never received.

According to this opinion, two errors appear in the record in this action. One is in the form of the judgment. If the appellant was the owner of the property in controversy, he was entitled to a judgment for its possession, and for its value, according to the rule before stated, "in case a delivery can not be had." Sand. & H. Dig., § 6398. On the contrary, the judgment rendered is for the value of the property determined by the court, and then for its possession in the event the value is not paid. The other error is the failure to fix the value according to the rule we have stated.

For these errors the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

BUNN, C. J., (dissenting). This is an action of replevin, as contended by appellant, but an action of trespass or trover, as contended by appellee, brought by appellant against appellee for the recovery of a lot of cross-ties, or the value thereof, in the one case, and damages for the conversion thereof, in the other case. As the names of actions amount to nothing under the civil code, we have necessarily to resort to the language and prayer contained in the pleadings, and the intention of the plaintiff as therein shown, in order to determine what is the real object of his suit. In this case there is the form and

prayer of a replevin suit, but the service of the writ, restricted
to the office of a summons merely, at the instance of the plain-
tiff, indicates that it was not intended by him as a possessory
action, but one for money damages only. Where a complaint
is for replevin, and the property is not taken by the officer be-
cause it cannot be found, there is no reason to presume that the
plaintiff intends to prosecute his action otherwise than by re-
plevin; but when the record shows that he prosecutes his action
voluntarily otherwise than in replevin, the case is, or may be,
quite different.

What object could the plaintiff have in directing the sher-
iff to make no seizures of the property mentioned in the writ
in his hands, unless he intends merely to recover the damages
he has suffered, or unless it be that he is afraid of his case,
and declines to become responsible for the seizure and detention
of the specific property named in the writ? He certainly has
the right to avoid this liability, but he cannot wait until judg-
ment is pronounced, and then demand a seizure, and thus make
sure of his case, because the law does not tolerate such a lying-
in-wait. The statute on the subject (section 6387 of Sand. &
H. Dig.) reads thus: "The plaintiff in an action to recover
the possession of specific personal property, may, at the com-
mencement of the action, or at any time before judgment, claim
the immediate delivery of the property, as herein provided."
And section 6396, *ib.*, reads: "An order may at any time
before judgment, be directed to any other county for the deliv-
ery of the property claimed."

When the court comes to render judgment, it does not go
about it to inform the successful party beforehand of the nature
and scope of that judgment, but renders it on the record and
the evidence before it, regardless of the effect it may have
upon the one or the other of the parties. The court, in a case
like this, will dispose of the property shown to be in the hands
of the sheriff, or such as has been delivered by him to the one
or the other of the parties; and this showing is made by his
return, and that only. In this case the return showed that there
was no property in the hands of the sheriff, and that there had
been none by virtue of the writ. No judgment of seizure or
caption could therefore be rendered, for the writ in the case had

served its purpose, and the judgment cut off all aliases. "If the owner of standing timber cut into logs by an innocent trespasser sees fit to bring trespass or trover for its value, instead of reclaiming his property, he thereby elects to receive a just compensation for said timber." *Gates* v. *Rifle Boom Co.*, 70 Mich. 309.

Aside from the effect of the pleadings, proceedings and judgment in the case, the right of recovery in any form of action is involved, and to discuss this question it is necessary to recall the facts in evidence. One James M. Smith, of Dayton, Ohio, became the purchaser and owner of the forty-acre tract of land from which the cross-ties in controversy were cut, by purchase from one Hathway, who lived at the time of the purchase from him in Pegna, in the same state. The purchase was by deed dated November 4, 1894, and filed for record in the recorder's office of Green county, this state, December 19, 1894. Appellant, Eaton, purchased this land from Smith by deed dated December 3, 1894, and recorded in said office December 26, 1894. This deed from Smith to Eaton was defectively acknowledged, in this: that the certificate of acknowledgment did not contain the word "consideration," required by statute. The omission of this word made it necessary to establish the deed by extraneous proof, before it could be used as such; and not only so, but it was, in that shape, incapable of being put on record for the purposes of record preservation and notice to the world. *Little* v. *Dodge*, 32 Ark. 453; *Shryock* v. *Cannon*, 39 Ark. 434; *Jacoway* v. *Gault*, 20 Ark. 190; *Johnson* v. *Godden*, 33 Ark. 600; *Griesler* v. *McKennon*, 44 Ark. 517; *Wright* v. *Graham*, 42 Ark. 140. It is, moreover, in proof that the defendant never had any actual notice of Eaton's claim or ownership of the land from which the ties were cut until sometime after he had cut the same and hauled them away. In the progress of the trial, when the defendant exhibited the timber contract from Smith to Rogers, under which he claimed by purchase from Rogers, its execution was put in issue by the plaintiff, and, the subscribing witnesses not being present, and not having proved the same, the court held, in effect, that the contract was not proved, notwithstanding the testimony to that effect by other witnesses present, and

that therefore the same was not admissible in evidence. Thus the defendant failed to prove his title to the timber, but this exclusion of his contract did not exclude it for other purposes than that named in the objections to it—evidence of title. It still could be used to show the *animus* of defendant's possession, and the extent of it, just as could be shown by a void deed.

The controversy then narrows down to right of possession. Each one claimed under a defective paper title—defective as against the other—and the burden was on the plaintiff to show the superior right to the possession of the timber. The defendant's purchase was first in point of time, and his possession was exclusive and uninterrupted for the time he had occasion to hold it; and he had during the time neither actual nor constructive notice of plaintiff's claim or title. Should not the plaintiff have taken some notice of his occupancy? Had he done so, and made proper inquiry, he would have received actual notice of defendant's claim, which antedated his own. Failing in this, did the plaintiff establish his right to the cross-ties, and show his right in replevin? Much difficulty arises in cases where an innocent trespassser (as in this case) has cut timber from another's land and manufactured it into another and more valuable form. When the owner attempts to replevy his property in the new form, he is confronted with several difficulties. First, the difficulty of identification; and, that being obviated or overcome, then arises the question of value to fix the amount of the alternative judgment.

*Prima facie*, when one claiming to be the real owner and entitled to the possession is entitled, not only to the specific property replevied, but also to its value, in case the property cannot be delivered to him, and in the case of an appropriation by a wilful trespasser, the alternative judgment should be for the value of the property in the form most advantageous to the owners. But in the case of timber taken by an innocent trespasser the equitable doctrine now very generally prevails to the effect that while the owner is entitled to his timber, and the true value of it in the alternative, yet the innocent trespasser is entitled to a reduction on the alternative judgment to the extent of the value of his labor bestowed upon the property to put it in the new shape, and thereby increase its value. This

rule naturally leaves an option to the defendant to restore the property to the plaintiff, or pay the equitable damages to him. There is no doubt as to the general application of this equitable rule, the only question in any case being whether or not the facts justify its application; and, if the facts in this case call for the application of the rule, the judgment should be affirmed; otherwise not.

In *Wetherbee* v. *Green*, 22 Mich. 320, Judge Cooley, in delivering the opinion of the court, said: "No test which satisfies the reason of the law can be applied in the adjustment of questions of title to chattels by accession, unless it keeps in view the circumstances of relative values. When we bear in mind the fact that what the law aims at is the accomplishment of substantial equity, we shall readily perceive that the fact of the value of the materials having been increased a hundred fold is of more importance in the adjustment than any chemical change or mechanical transformation, which, however radical, neither is expensive to the party making it, nor adds materially to the value. There may be complete changes with so little improvement in value that there could be no hardship in giving the owner of the original materials the improved article; but in the present case, where the defendant's labor, if he shall succeed in sustaining his offer of testimony, will appear to have given the timber in its present condition nearly all its value, all the grounds of equity exist which influence the courts in recognizing a change of title under any circumstances." That was a case where timber of the value of twenty-five dollars had been converted into hoops by an innocent trespasser, and the hoops were of the value of seven hundred dollars, denoting an increase of twenty-eight fold; and upon the facts the court said: "We are of opinion that the court erred in rejecting the testimony offered. The defendant, we think, had a right to show that he had manufactured the hoops in good faith, and in the belief that he had the proper authority to do so; and if he should succeed in making that showing, he was entitled to have the jury instructed that the title to the timber was changed by a substantial change of identity, and that the remedy of the plaintiff was an action to recover damages for the unintentional trespass."

In that decision Judge Cooley emphasizes two essential things to be established by the defendant claiming the benefits of the equity rule: First, the defendant must show that he is in fact an innocent trespasser, if trespasser at all; second, he must show that the timber was changed by a substantial change of identity, and, therefore, that the remedy of the plaintiff is an action for damages for the unintentional trespass. The court in that case also plainly says that much depends upon the degree of increase of value by the defendant's labor, as to whether he will be entitled to the equity under the rule or not. In other words, that a great ratio of increase might entitle him to the relief, while a less ratio of increase in the value of the property might fail to insure him the relief sought. In the one case, the increase would require the plaintiff to rely upon trespass or trover as his remedy, while the other would leave him to pursue his remedy for the possession of the property specifically, as in replevin. This certainly does not leave the matter at the option of the plaintiff. While the court in that case was in the main correct, yet there does not appear to be any very sound reason in making the defendant's equitable right dependent upon the degree of increase in value he has given to the property; for, if the increase is material, his right attaches, and the mere degree of the increase is a circumstance more or less important in view of the financial condition of the defendant, as well as in respect to the benefit conferred upon the plaintiff by the defendant's labor, and in changing the condition of the property. Sedgwick on Damages defines. the rule thus: "If the property has been altered and increased in value, the rule would again depend on the character of the conversion. If that were wilful, then the value of the article so increased would be the rule. But that should never be where the act was *bona fide*; and in such case the true rule would be to allow the defendant for whatever value his labor had actually conferred upon the property." The increase in value being material, it seems to be the right of the innocent trespasser to have the benefit of it, in the adjustment of the equities in the cases, without other conditions.

The supreme court of Michigan seems to be in conflict with itself on the subject, for in the more recent case of *Gates* v.

*Rifle Boom Co.*, 70 Mich. 309, we find this language: "The owner of standing timber is not only entitled to the timber, but he has a right to it as it is, and to keep it uncut if he so desires. No man, however innocently he may do it, can go upon his land and convert the standing trees into logs, and charge him for the labor thus expended against his will, and perhaps his real benefit. He may prefer to have the timber to stand, and, if left standing a few years, it may bring him an immense profit. There is no injustice in holding that the trespasser must lose the labor he has expended in converting another's trees into logs. Such trespasses, though casual and not wilful, are ordinarily, as was the trespass in this case, the result of negligence upon the part of the trespasser, and there is no good reason why he should be recompensed for labor and expenses incurred in the trespass when it might have been avoided by proper diligence. The owner has a right to reclaim his logs, but, if he sees fit to bring an action of trespass or trover, instead of regaining his property, he voluntarily puts himself within the rule of damages prevailing in such actions, and thereby elects to receive only a just and fair compensation for his property as it was before the trespasser intermeddled with it." This leaves the matter at the option of the plaintiff, whether he will adopt one action or the other. The conflicting character of that decision is somewhat destroyed, it is true, by the statement that the trespasser, though not a willful trespasser, was yet a negligent one, and in so far not an innocent one, such as entitled him under the rule we are now considering.

But, assuming that the court was discussing the case as coming under the equitable rule, the decision makes the right of the defendant altogether subject to the option of the plaintiff, whether he chooses to bring trespass or trover, in which the defendant's equities may be enforced, or replevin strictly, in which his equities will be ignored.

I think the rule laid down by Sedgwick is the correct rule, and that which expressed the reason of it from the beginning; and in trying to give other reasons for it, and assigning outside conditions upon which it will be enforced, courts have only succeeded in confusing the subject.

For reasons good as to each of the grounds of contention, I think the judgment should be affirmed.